279 So.2d 4 (1973)
THE FLORIDA BAR, Complainant,
v.
Garrett D. QUICK and Rutheled B. Wolter, Respondents.
No. 42152.
Supreme Court of Florida.
June 6, 1973.
Charles M. Harris, Titusville, for complainant.
Horton and Perse, Miami, for respondents.
PER CURIAM.
In this Bar discipline proceeding, we review a recommendation of the referee dated December 10, 1971, that respondents, Garrett D. Quick and Rutheled B. Wolter, be found guilty of violations of Article XI, Rule 11.02(4) of the Integration Rule of The Florida Bar, 32 F.S.A., and Rule 27 of the Additional Rules Governing the Conduct of Attorneys, 32 F.S.A. The referee *5 has recommended a private reprimand for respondent Quick and a public reprimand for respondent Wolter. Respondent Quick has petitioned this Court for review of the referee's recommendations.
The record below is voluminous and the testimony is conflicting, but the proceedings and evidence have been summarized by the referee as follows:
"SUMMARY OF THE PROCEEDINGS
"The Complaint against Respondents charged them with exacting, in the course of their representation of Ruth Wieland Chamberlain, Plaintiff in a divorce proceeding against Robert Helfrich Chamberlain, an attorneys' fee that was extortionate or fraudulent within the purview of Article XI, Rule 11.02(4), Integration Rule of The Florida Bar. The Complaint further alleged that Respondents had, sometime during the course of their representation, verbally agreed with their client to a modification of their initial fee arrangement, whereby they would handle the matter on a flat fee arrangement for a sum certain, but that the bill ultimately rendered by Respondent Quick on behalf of both Respondents exceeded this flat fee amount so as to be extortionate or fraudulent within the meaning of the Rule cited above... ."
"SUMMARY OF EVIDENCE
"The complaining witness, Ruth B. Chamberlain, testified that on June 9th, 1969, she contacted Respondent Wolter with whom she was acquainted since both are members of and active in the same church, and she consulted with Respondent Wolter about her fear that her husband, to whom she had been married since 1938, was about to desert her and their children and join another woman in South America. Respondent Wolter advised Mrs. Chamberlain that his practice was restricted to tax and trust work and he recommended to her the names of several local attorneys included among whom were Respondent Quick who occupied an office immediately adjacent to Respondent Wolter. Mrs. Chamberlain selected Respondent Quick and Respondent Wolter and Mrs. Chamberlain then met with Respondent Quick and a Retainer Contract and Employment Agreement dated June 9th, 1969, ... was signed by Mrs. Chamberlain as client and Respondent Quick as attorney. Said Retainer Agreement provided for an hourly charge of $30.00. Mrs. Chamberlain testified that she was not aware at that time that Respondent Wolter would continue to participate in the matter, and Respondent Wolter's name does not appear on the Retainer Contract. Respondent Wolter testified that his agreement was identical with that of Respondent's Quick, but that it was verbal, and that he did not have it reduced to writing because of his past relationship with Mrs. Chamberlain in their church activities. However, Mrs. Chamberlain did become aware of the fact of Respondent Wolter's participation on a fee basis in late June when Ruth Bowers, Mr. Quick's secretary, reviewed the ledger time sheets with Mrs. Chamberlain and made reference to Respondent Wolter's `hours' as being billed to Mrs. Chamberlain.
"Mrs. Chamberlain further testified that she was concerned about the mounting legal charges and had paid the sum of $1,500.00 between June 9th and July 1st, 1969, in addition to $150.00 which had been paid by Mr. Chamberlain as temporary attorney fees, and that she had mentioned her concern to Respondent Wolter. On or about June 24, 1969, Respondent Wolter met with Mrs. Chamberlain at her home, and according to Mrs. Chamberlain's testimony, advised her that the Respondents would agree to a flat fee including costs of $5,000.00 and that he presented this proposal as a sort of gamble in that if the hours involved in prosecuting the divorce proceedings *6 to a conclusion exceeded the flat fee, multiplying those hours by $30.00 an hour, then she would be ahead and if not the converse would be true. According to Mrs. Chamberlain, this proposal was accepted by her and on or about July 1, 1969, she received a statement on Respondent Quick's bill head showing `Total Charge for Services, Court Costs, etc.' as $5,000.00, acknowledging receipt of $1,500.00 as being paid on account and stating a balance of $3,500.00... . Mrs. Chamberlain further testified that she paid the additional sum of $1,500.00 on or about July 7th, and on July 10th, 1969, executed an installment note in the amount of $2,000.00 payable to the order of Respondent Quick. .. which sums, in the aggregate, totaled $5,000.00. Respondent Quick testified that the purpose for the statement of July 1, 1969, in the amount of $5,000.00 was a psychological one only, and was intended to be utilized to bring Mr. Chamberlain to a reconciliation or to some other early resolution of the litigation. Respondent Wolter's testimony on this point was in a similar vein.
"However, according to Respondent Quick's time records, as of July 1, 1969, the total number of hours accrued for both Respondents equaled $2,010.00 in earned fees based on the $30.00 an hour rate, and on July 10, 1969, which was the date that the promissory note was executed by Mrs. Chamberlain, this earned fee amount had increased to $2,820.00. As of July 10th, 1969, the Respondents had already been paid $3,000.00 by Mrs. Chamberlain (plus an additional $150.00 by Mr. Chamberlain). Moreover, and on July 2, 1969, the deposition of Mrs. Chamberlain was taken by A.T. Rossetter, attorney for Mr. Chamberlain, in Civil Action No. 47847, Circuit Court of the Eighteenth Judicial Circuit, In and For Brevard County, State of Florida, ..., with Respondent Quick appearing on behalf of Mrs. Chamberlain. Mrs. Chamberlain was asked at page 29 of said deposition, what her fee arrangement was with the Respondent Quick, and her response was that she had paid $1,500.00 and was in the process of paying the balance. When asked what she had agreed to pay Respondent Quick, she answered that he had given her a bill for $5,000.00, and that she believed that this covered `all of the entire services' ... `from the beginning to the end.' Respondent Quick testified that he made no effort to correct the record made in the deposition, nor was any documentation made as between the Respondents or either of them and Mrs. Chamberlain clarifying the matter of attorneys fees.
"The divorce proceedings went to final hearing and a final decree was entered on October 10, 1969, which decree included an award of attorney's fees of $3,500.00 to Respondents. On November 18th, 1969, Mrs. Chamberlain received a statement from Respondent Quick . . in the amount of $14,998.99 which amount she paid with the exception of the $3,500.00 which had been assessed against the Defendant, Mr. Chamberlain. This amount was subsequently paid.
"At the time of the billing dated November 18, 1969, Respondent Quick's records indicate that he spent in excess of 243 hours on behalf of Mrs. Chamberlain, which time also included a number of hours which Respondent Quick anticipated he would be spending on behalf of Mrs. Chamberlain subsequent to November 18, 1969, for the purpose of clearing up various details incidental to the divorce proceeding. Respondent Quick's records also indicate that during this same period of time, namely, from June 9, 1969, to November 18, 1969, Respondent Wolter spent in excess of 208 hours on behalf of Mrs. Chamberlain, which representation included hearings and matters generally involved with the prosecution of the divorce proceedings. Mrs. Chamberlain testified that she was well satisfied with the outcome of the litigation."
*7 Based on the testimony and exhibits presented at the hearings, the referee made the following findings of fact:
"1. That Mrs. Chamberlain employed Respondent Quick to act as her attorney in a domestic relations matter involving her husband, and she did at the same time employ Respondent Wolter to act as tax and trust consultant to Respondent Quick.
"2. That Mrs. Chamberlain agreed to pay each of the Respondents $30.00 per hour for their respective time spent in connection with her representation.
"3. That subsequent thereto and on or about June 24, 1969, Respondents modified their original agreement with Mrs. Chamberlain and entered into a lump sum or flat fee contract within and whereby they agreed to accept the sum of $5,000.00 for their joint services and costs, documenting this understanding with a formal statement, promissory note for the difference between the cash paid and the amount indicated on said statement.
"4. That thereafter and on November 18, 1969, Respondents jointly, issued a statement to Mrs. Chamberlain for $14,998.99, which was approximately $10,000.00 in excess of that amount which they agreed to charge for their services on behalf of Mrs. Chamberlain.
"5. That Respondent Quick sat mute while Mrs. Chamberlain testified under oath that she had a flat fee arrangement with her attorney for $5,000.00 for his representation in connection with the divorce proceedings.
"6. That sometime during the course of representation Respondent Wolter discontinued the limitation of his participation to tax and trust consulting, and actively participated in the divorce proceedings as general divorce counsel or co-counsel for Respondent Quick without notifying Mrs. Chamberlain of the new role that he was taking on her behalf in the litigation or receiving her assent thereto.
"7. That there is insufficient evidence to establish that the Respondents unduly complicated and extended the cause for the purpose of increasing the attorneys fees which they charged Mrs. Chamberlain.
"8. That the fees charged by the Respondents, Quick and Wolter, were fraudulent and extortionate and a direct breach of the fee arrangement existing between Mrs. Chamberlain and the Respondents for the payment of a total sum of $5,000.00."
Respondent Quick contends that the proof adduced by The Bar in support of the findings of fact and recommendations of guilt and discipline "failed to sustain the Bar's burden of proving impropriety by clear and convincing evidence" as required by The Florida Bar v. Rayman, 238 So.2d 594 (Fla. 1970) and The Florida Bar v. Schonbrun, 257 So.2d 6 (Fla. 1971). We are compelled to agree.
Article XI, Rule 11.02(4) of the Integration Rule provides that controversies as to the amount of fees charged are not grounds for disciplinary proceedings unless the amount demanded is extortionate or the demand is fraudulent.[1] Thus, in order to show impropriety, it is necessary for The Bar to prove by clear and convincing evidence that the amount demanded from the client is extortionate or that the demand is fraudulent. We find no *8 such clear and convincing evidence in the record before us.
Initially the client, Mrs. Chamberlain, and respondent Quick agreed in writing to $30.00 per hour as a fair fee for the attorney's services. The final fee charged, $14,998.99, represented in excess of 450 hours work on the case at $30 per hour plus costs. The fee charged, therefore, accorded with the original agreement between the parties, at least to the extent that respondents' time charts were accurate and did not represent a padding of the bill. There was no evidence below to suggest that such was the case. Moreover, the referee made a specific finding that the evidence was insufficient to establish that respondents unduly complicated and extended the cause for the purpose of increasing the attorneys' fees chargeable to the client.
Thus, we take it as established that respondents actually expended 450 hours of their time in furtherance of Mrs. Chamberlain's claim, and we confront the primary issue in the case: the existence or non-existence of an oral novation of the written fee agreement materially altering the total fees chargeable to Mrs. Chamberlain. Mrs. Chamberlain testified that she became concerned about the mounting charges, discussed the matter with respondent Quick and received an oral agreement for a flat $5,000 fee to cover all services and costs. The client supported her assertion with a statement for total services in the amount of $5,000 submitted by Quick on July 1, 1969. Respondent Quick did not deny sending the statement but testified that it was provided at Mrs. Chamberlain's request as a negotiating tool, the idea being that a fairly high fixed charge might provide an impetus for the husband to settle the case. Quick did deny a novation of the original written fee agreement.
We do not view these contradictory facts, supported only by the two statements tendered to the client and the testimony of interested parties to the matter as establishing by "clear and convincing evidence" a novation of the original fee agreement and subsequent disregard thereof. Moreover, after considering the overall import of the testimony adduced below, we are persuaded that the dispute is an inappropriate one for disciplinary action, and should more properly be made the subject of a civil action in the circuit court, if any party feels the necessity for redress.
With regard to Finding #6 of the referee, the unauthorized participation of respondent Wolter in the litigation, our conclusion must be the same. Rule 27 of the Additional Rules guards against "deceit or wilful misconduct" of the attorney. Even assuming that we accept the client's statement that she was unaware of Wolter's participation initially (and Wolter denies this), it is clear that she learned of his contribution during the course of the litigation and approved it. She testified that she was extremely satisfied with the outcome of the lawsuit. We fail to find in this testimony the "clear and convincing evidence" of deceit or wilful misconduct required for disciplinary action.
In reaching the result we do in the case sub judice, we have no wish to thwart the discipline of attorneys guilty of impropriety in their professional behavior. It is necessary to bear in mind, however, that disciplinary actions while not fully criminal in character, are penal proceedings the results of which may permanently cripple an attorney's reputation and standing in the community. Thus, we adhere to the view we took in The Florida Bar v. Rayman, supra, that the quantum of proof necessary to sustain a referee's finding of guilty is something more than the mere "preponderance of the evidence" sufficient for a civil action. We have defined that quantum as "clear and convincing evidence", not as *9 stringent a standard as that required in criminal cases, but most certainly more than the contradictory and inconclusive testimony adduced in the instant case.
Accordingly, the findings and recommendations of the referee are disapproved for the reasons specified and the charges against respondents Garrett D. Quick and Rutheled B. Wolter are dismissed.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, BOYD and McCAIN, JJ., concur.
MASON, Circuit Judge, dissents with opinion.
DEKLE, J., dissents and concurs with MASON, Circuit Judge.
MASON, Circuit Judge (dissenting):
I must respectfully dissent. The record herein amply sustains the referee's findings. The charges made by these two attorneys were, in my opinion, extortionate and the demand fraudulent; and not only constituted a breach of trust which an attorney owes his client but were a direct, intentional breach of the fee contract made by the respondents with their client, Mrs. Chamberlain. The controversy between these respondents and their client was not a mere misunderstanding between them as to the fee to be charged which would be the subject of a civil suit only, and not an appropriate one for disciplinary proceedings, but was one which grew out of the attorneys' studied effort to extract a fee not within the contemplation of the parties to the fee contract. I would sustain the referee's findings, and would suspend both respondents for ninety days and impose the costs of these proceedings upon them.
DEKLE, J., concurs.
NOTES
[1] The Rule has since been amended to include excessive fees as a ground for discipline, but we are concerned in this case with the requirements of the Rule at the time of the conduct complained of.