435 So.2d 827 (1983)
THE FLORIDA BAR, Petitioner,
v.
Daniel C. PERRI, Respondent.
No. 62163.
Supreme Court of Florida.
July 21, 1983.
John F. Harkness, Jr., Executive Director, Stanley A. Spring, Staff Counsel and Mary Ellen Bateman, Bar Counsel, Tallahassee, for petitioner.
Alan H. Rosenbloum, Gulf Breeze, for respondent.
PER CURIAM.
This is a lawyer disciplinary proceeding in which The Florida Bar requests that this Court disbar the respondent, Daniel C. Perri, for his improper use and conversion of trust account funds. The referee identified significant factors in mitigation, including respondent's early admission of his ethical violation, his agreeing to an immediate suspension, and his prompt restitution of the funds converted, and recommended that respondent be suspended from the practice of law for a period of three years.
The facts are undisputed and reflect that the respondent, in his practice of law as a tax attorney, became involved in establishing and operating investment ventures for several of his clients. Funds from clients for the investment ventures were placed in the trust account of the firm with which respondent was associated, even though these funds technically were not trust funds. When some of the ventures experienced financial difficulty, respondent borrowed from other trust accounts to cover the deficits. The primary sources for these borrowed funds were the other investment ventures. These actions resulted in the conversion of $127,446.46.
In a detailed and comprehensive finding of fact, the referee, a distinguished jurist with over forty years' experience as a judicial officer in this state, stated:
(3) The misappropriations and conversions occurred over the period between November, 1979, and January, 1982. They were discovered on January 8th, 1982, when one of the trustees of the funds received a personal check of the respondent to cover one of the entitlements he was entitled to under the trust instead of a check drawn on the trust account. The trustee called the bank on which the check of respondent was drawn and was told that respondent did not have sufficient funds in his personal account to cover the check. Whereupon the trustee called one of the local circuit judges, advising the judge as to what had happened. The judge, in turn, called one of the senior members of respondent's law firm, informing him as to the telephone call. At a meeting of the members of the law firm the next day respondent disclosed what had been going on, all to the effect that he had over a period of *828 more than two years misappropriated and/or converted to his own use in personal business ventures unrelated to the trust character of the funds, large amounts of trust funds held by the law firm in trust for numerous clients of the firm of which he, the respondent, was a partner.
(4) On the first business day thereafter respondent, his personal counsel, and one of the members of the law firm went to Tallahassee and informed The Florida Bar as to what had occurred. With respondent's consent an order was entered temporarily suspending respondent from the practice of law in Florida. He is now under such suspension which was ordered in January, 1982.
(5) Upon learning of respondent's misconduct the law firm immediately made good to the several trustees all monies which had been misappropriated by the respondent.
(6) Shortly thereafter respondent, with the financial aid of his wife and his parents, and with the use of some funds of his own, repaid the law firm all funds which they had paid out to cover his defalcations. Upon questioning by the referee one of the senior members of the law firm stated that the firm has suffered no financial loss for which it expects to be reimbursed from the respondent.
(7) Respondent is thirty-six years old. He is a graduate of Tulane University, has a law degree from American Law School in Washington, D.C., and a master's degree in tax law from Georgetown University. Upon graduation he went to work for the U.S. Justice Department under their honors program as a trial attorney. He was admitted to practice law in Florida in October of 1971 and was assigned by the Justice Department to handle tax cases for the government in Florida, both jury and non-jury. He worked for the Justice Department for five years but left there to go to work for the law firm of Harrell and Wiltshire in Pensacola, January of 1976. He was hired by the firm as a tax attorney and remained with them until the disclosure of the defalcations, subject of this action. During the course of his affiliation with the firm he became a partner therein. At the time of such disclosure, he was considered by all who had occasion to know him as a brilliant young lawyer.
Respondent's troubles stemmed from an over-zealous ambition to succeed, not only as a professional man but also in business. His clients were mostly medical doctors and other professional and business people. His problems began when, at the insistance [sic] of clients, he began finding and operating investment ventures. He was not qualified to operate such ventures and as a result when one of them got into financial difficulty he would borrow funds from another trust account to cover the funds needed, hoping later to recoup and replace the funds borrowed. Thus started a series of borrowings from other accounts for various purposes, some for personal expenses, but mostly to cover deficits in investment ventures. As a result his law practice got out of control. The funds used by him should not even have been in law firm trust accounts to begin with. For the most part these were business accounts for ventures unrelated to the practice of law and should have been kept separate and apart from the law firm's trust accounts.
After this case broke[,] respondent, at the suggestion of a client friend, went to see a clinical psychologist for evaluation and treatment. The doctor testified that respondent has a compulsive personality disorder. As a result he began trying to fulfill, "almost in an egomanical [sic] way, the expectations of other people" (the words of the psychologist). Fear of making a mistake was predominant in respondent and created intense anxieties, causing a breakdown in normal workloads in the hope of not [being] found to be wrong. He, in the opinion of the psychologist, could not admit a mistake and was too proud, when he got overboard financially, to go to his family and friends for help. Instead he would borrow from one *829 trust account to cover a loss or deficit in one of his ventures, hoping to replace the defalcation at a later date.
Respondent is a broken man, having lost everything he had hoped to achieve  his law practice, his reputation, financial security, his family. Yet his associates in various business ventures still trust him and he still manages the business affairs of some of them. No client has sustained any financial loss by reason of respondent's actions, and those of them who testified in this case are still his friends.
Respondent is under treatment by the psychologist for his emotional problems. The doctor says he is making progress but that it will take another two or three years of treatment to hope that respondent's emotional disorders would be removed. At this time the public has no assurance that if re-admitted to practice he would not fall back into the same pattern of behavior. But the doctor believes that there is hope for him after two or three years of the treatment he is now undergoing.
The referee also found that there had been no prior disciplinary measures against respondent and recommended that respondent be suspended from the practice of law for three years, beginning from the entry of judgment by this Court, and that he be reinstated only upon proof of rehabilitation.
It is clear from the referee's findings that there are factors present in this case which warranted his conclusion that the proper discipline is a three-year suspension from the practice of law rather than disbarment. These factors include the respondent's early admission of guilt and acceptance of an immediate suspension in January, 1982, his borrowing of the moneys necessary to make restitution of all lost funds, the fact that the majority of the misappropriated funds technically were not trust funds, the fact that the funds transferred were used to cover deficits in investment accounts rather than for his personal use, the fact that no client sustained any loss and that those clients who testified still considered respondent to be a friend, and, finally, that respondent suffered from emotional disorders that require professional treatment.
Given all these factors, we find that the referee was justified in recommending a three-year suspension. We adopt the referee's findings and approve his recommendation. Effective upon the filing of this order, the respondent shall be suspended from the practice of law in Florida for three years and until he shall prove his rehabilitation as provided in rule 11.10(4) of the Integration Rule. Respondent shall pay the costs of these proceedings in the amount of $1,529.69.
It is so ordered.
ADKINS, BOYD, OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs specially with an opinion.
ALDERMAN, C.J., concurs in part and dissents in part with an opinion.
EHRLICH, Justice, specially concurring.
I share Chief Justice Alderman's very strong feelings about the respondent's misconduct. A clinical psychologist who testified on respondent's behalf had a fancy name for respondent's problem  "compulsive personality disorder." I view respondent's acts as nothing more than plain, old fashioned greed  inexcusable without regard to its appellation. Nonetheless, I feel that the facts in this case support the punishment recommended by the referee, rather than the disbarment sought by the Bar.
The record reflects that the results of respondent's misconduct has been truly devastating to him personally, financially, professionally, and as a family man. He has been suspended from the practice of law since January 1982. If he be suspended for three years, it will probably be an additional six to nine months, as a minimum, before he can possibly be reinstated, which will mean he will have been suspended and out of the practice for a minimum of five years. He will also have the burden of proof of rehabilitation.
If disbarred, he could apply for readmission after a period of three years, but would have to prove character and fitness including passing all parts of the bar examination. The significant difference between *830 disbarment and a three year suspension is the stigma that attaches to disbarment, as well as the fact of having to pass The Florida Bar examinations. On balance in this case, I do not believe that the stigma and additional burden of passing the bar examination are justified.
ALDERMAN, Chief Justice, concurring in part, dissenting in part.
I concur with the majority's approval of the referee's findings of fact relative to Perri's misconduct, but I disagree with the approval of the referee's recommendation of the appropriate discipline to be imposed. Perri's misconduct warrants disbarment, no lesser penalty. This Court has consistently held that disbarment is the appropriate discipline for this type of misconduct. In my view, the fact that Perri has made restitution does not mitigate the discipline warranted by his misconduct. Rather, restitution is a factor to consider if he should ever seek readmission to The Florida Bar.
Accordingly, I would accept The Florida Bar's recommendation and would disbar Daniel Perri from the practice of law in this state.