453 So.2d 794 (1984)
THE FLORIDA BAR, Complainant,
v.
Emile Gus MUSLEH, Respondent.
No. 62074.
Supreme Court of Florida.
May 24, 1984.
Rehearing Denied August 31, 1984.
*795 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and David G. McGunegle, Bar Counsel, Orlando, for complainant.
C. Clyde Atkins, Jr. of Musleh, Piccin, Atkins & Krehl, Ocala; and Louis M. Jepeway, Jr. of Jepeway & Jepeway, Miami, for respondent.
PER CURIAM.
This cause is before the Court on cross-petitions for review of a referee's report and recommendation. We have jurisdiction pursuant to Florida Bar Integration Rule, article XI, Rule 11.09. We adopt the findings of fact and recommendation as to guilt but modify the disciplines to be imposed.
Respondent is a sole practitioner in practice since 1949. In 1980, respondent was indicted by a federal grand jury for conspiring to receive, to transport in interstate commerce and to sell stolen securities. He was found to be incompetent to stand trial and entered Shands Hospital for evaluation and treatment. He was released after five weeks but continued a course of out-patient treatment consisting of drug and clinical therapy. His condition stabilized dramatically under this regimen.
*796 Respondent filed a notice of defense of insanity and was found competent to stand trial. In February, 1982, he was tried and found not guilty by reason of insanity.
In April, 1982, The Florida Bar filed a complaint alleging violations of Rules 11.02(3)(a) and (b) of article XI of the Integration Rule of The Florida Bar and of Disciplinary Rules 1-102(A)(3), (4), (5) and (6) of the Code of Professional Responsibility. The allegation of violation of DR 1-102(a)(5) was later withdrawn. Respondent answered that the conduct giving rise to the complaint was "not intentional or willful, but occurred during a time when he was mentally incompetent and not responsible for his acts." Respondent recited the outcome of his trial and also detailed the diagnosis (bi-polar affective disorder  manic-depressive illness) and treatment of his mental condition. He did not deny the nature or the occurrence of the events underlying the criminal charges and the Bar complaint.
At the hearing, respondent presented several character witnesses, including his secretary, several professional colleagues, and personal friends, who testified to his earlier competency in the practice of law, his sudden, marked deterioration in personal and professional behavior around the time of the criminal conspiracy, and his subsequent return to his normal high standard of conduct.
The referee found that respondent was clearly mentally ill at the time of the infractions, and he went on to address the question of whether respondent could appreciate the criminality of his conduct. Relying on the testimony of respondent's treating psychiatrist, the referee found that respondent could appreciate the nature of his acts.
The referee recommended that respondent be found guilty on all counts and that respondent be suspended from the practice of law for six months. Thereafter, the referee recommended, he should be automatically reinstated but continue on probation for three years. Costs in the amount of $1,413.84 were itemized with the recommendation that they be charged to respondent.
Respondent filed a petition for review and the Bar answered and filed a cross-petition for review.
As a threshold issue, respondent argues that complainant is barred by collateral estoppel from proceeding against him because he was acquitted in the criminal trial. This contention is answered by Florida Bar Integration Rule, article XI, Rule 11.04(2)(c): "The acquittal of an accused in a criminal proceeding shall not necessarily be a bar to disciplinary proceedings." The rule is justified by the different standard of proof of guilt in the two proceedings, and by the different goals of the two proceedings. In a criminal proceeding, guilt must be proved beyond a reasonable doubt; the standard in bar proceedings is clear and convincing evidence. The Florida Bar v. Hirsch, 359 So.2d 856 (Fla. 1978); The Florida Bar v. Quick, 279 So.2d 4 (Fla. 1973). Moreover, even though bar disciplinary proceedings share the same goals as criminal proceedings (punishment, deterrence, protection of society), they do so in the context of enforcing the higher standard of duty and conduct required of those who exercise the privilege of practicing law. See Fla.Bar Integr.Rule, art. XI, Rule 11.02. The finding of not guilty of the charged felony in federal court does not necessarily indicate that respondent did not violate the more stringent Code of Professional Responsibility.
Respondent next asserts the defense of insanity, contending that it is available as a defense in all bar disciplinary actions and that the referee erred in finding him legally sane at the time of the charged actions. We note, first, that the test for insanity applied in the federal court was the Model Penal Code test, adopted by the Fifth Circuit in Blake v. United States, 407 F.2d 908 (5th Cir.1969), which defines insanity as a lack of substantial capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law. Florida has declined to accept *797 this definition and still follows the M'Naughten Rule which requires that a person, to be found legally insane, must lack the mental capacity to understand what he is doing and to understand that his act is wrong. Wheeler v. State, 344 So.2d 244 (Fla. 1977). Thus, under any circumstances, the holding of the federal court is not binding on these proceedings.
Respondent argues that the Bar failed to prove, by clear and convincing evidence, that he did appreciate the criminality of his acts. The referee, in summarizing the evidence on this point, wrote:
Although a greater number of mental health professionals were of the opinion as expressed during the criminal proceedings that the Respondent could not have willfully, intentionally committed the criminal act in his mental state at the time, and the professionals testifying before this Court as to these proceedings certainly were not unanimous in their view as to the Respondent's ability to appreciate and understand the illegality of his acts, I believe that the facts in this case support and require a finding that the Respondent's mental state does not resolve [sic] him of the responsibility for this misconduct but rather should be considered by this Court as mitigating factors. Upon this rationale, I felt compelled to recommend the suspension as discipline in this case.
We have reviewed the record and agree that the evidence supports the referee's findings.
Further, the referee correctly considered respondent's mental illness in mitigation of his wrongful actions. This has been the course adopted in past disciplinary proceedings. See, e.g., The Florida Bar v. Perri, 435 So.2d 827 (Fla. 1983); The Florida Bar v. Moran, 273 So.2d 379 (Fla. 1973); The Florida Bar v. Parsons, 238 So.2d 644 (Fla. 1970). The Parsons case is particularly apposite to our consideration of the case at bar. Parsons had been charged in circuit court with passing worthless checks, but he was found not guilty by reason of insanity on each count. The Florida Bar subsequently brought disciplinary charges against him on these and other allegations of misconduct. Parsons' insanity notwithstanding, the Court accepted the recommended discipline of a one-year suspension, pending restitution to those injured and restoration to mental competence, and probationary supervision.
In light of Parsons and other cases involving mental illness, we find the referee gave the proper weight and effect to respondent's evidence of mental illness. In reviewing the recommended discipline, however, we find the referee overlooked Rule 11.10(4) of The Florida Bar Integration Rule in recommending automatic reinstatement at the end of a six-months' suspension. Rule 11.10(4) requires proof of rehabilitation for reinstatement after any suspension of more than ninety days.
In weighing the proper discipline to be assessed on the facts of this case, we are mindful of the three purposes of Bar discipline  punishment of the offender, deterrence of those who might be tempted to emulate the wrongdoer, and protection of the public. The Florida Bar v. Pahules, 233 So.2d 130 (Fla. 1970). While we recognize the gravity of respondent's misconduct, we consider in mitigation his severely limited ability to control his activity. We cannot see how greater deterrence or protection of the public will be achieved by a lengthy suspension of one who, until this episode, had an unblemished record and who has now, with the help of ongoing medical assistance, returned to his former level of conduct and practice. We, therefore, suspend respondent from the practice of law for ninety days, the period to begin forty-five days after the filing of this order. We further impose probation for so long as respondent remains active in the practice of law and require, as a condition of probation, the filing of quarterly medical reports with the Clerk of the Supreme Court with a copy to staff counsel for The Florida Bar. The failure to timely file such reports will automatically terminate probation and reopen the judgment in this case. The Court will entertain petitions from either *798 party for modification of the condition of probation if at some time in the future respondent's condition merits such review. Costs of the proceedings are assessed against respondent.
Accordingly, it is the judgment of this Court that respondent, Emile Gus Musleh, be suspended from the practice of law for ninety days to be followed by automatic reinstatement. Further, respondent is placed on permanent probation subject to the conditions set forth above, and respondent is to pay costs in the amount of $1,550.55.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.