354 P.2d 995

In the Matter of W. S. MARTIN, Jr.

No. 6659.

Supreme Court of New Mexico.

Aug. 19, 1960.

Hilton A. Dickson, Jr., Atty. Gen., Thomas O. Olson, F. Harlan Flint, Asst. Attys. Gen., for relator.

G. T. Hanners, Lovington, Kermit Nash, C. M. Neal, Hobbs, for respondent.

COMPTON, Chief Justice.

This cause comes on to be heard on exceptions filed by respondent to the report of the Board of Commissioners of the State Bar of New Mexico, sitting as referees of this court, recommending that respondent be disbarred for unprofessional conduct in the solicitation of a bribe.

. An accusation was filed by the Committee on Ethics, Grievances and Discipline of the State Bar of New Mexico, charging respondent, a member of the bar, while serving as Probate Judge of Lea County, with having solicited a bribe of $500 from Herbert L. Cushing, attorney for the executrix of the estate of Harry G. Huston, deceased, a cause then pending in the Probate Court of Lea County, in consideration of his signing certain orders in said cause.

· A response was filed denying the charge and, following a hearing at which Cushing was called as the only witness in support of the charge, the referees, as a basis of their recommendation, made the following finding:

> "3. That on said date, September 3, 1959, at Albuquerque, New Mexico, said W. S. Martin, Jr. solicited of said Herbert L. Cushing payment of $500.00 to him, the said W. S. Martin, Jr., in consideration of his signing as Probate Judge the orders granting approval of said purchase and sale of said real estate."

Respondent's statement of facts as set forth in his brief, has been accepted as the facts for review and, deleting conclusions and arguments expressed therein, we quote the statement in full:

" * * * Herbert L. Cushing is a member of the Bar of New Mexico, residing at Albuquerque, New Mexico. He is the husband of Alice Huston Cushing, the executrix of the Estate of Harry G. Huston, Deceased. Alice Huston Cushing is one of the heirs to the estate and the other heir is Sally Elaine Huston, a minor. Cushing was acting as attorney for the executrix at the time of the initiation of the probate proceedings * * *.

"On January 2, 1959 a contract was made and reduced to writing under date of January 5, 1959, between Carl E. Hagland and his wife, as sellers, and Richard Civerolo, individually, Harry and L. D. Martin, individually, the Harry G. Huston Estate by Alice H. Cushing, executrix, as purchasers. Under the provisions of this contract the sellers agreed to sell certain property in Albuquerque, New Mexico, to the purchasers for a consideration of $210,000.00. The purchasers were to take the property Civerolo one-third, Harry and L. D. Martin one-third, and the Harry G. Huston Estate one-third. The contract provided for the payment of $15,000.00 in cash, which was paid, and the balance of $195,000.00 at the rate of $10,000.00 each year on December 31st of each year, beginning in 1961, together with interest at the rate of 5%. The contract provided that prepayment could be made on the basis of $3500.00 per acre in tracts of five acres. There was a provision in the contract that the land described in the real estate contract would be the only security to insure the collection of the outstanding

debt in the sum of $195,000.00, one-third of which was the debt of the Huston Estate by reason of the contract. * * * the $15,000.00 down-payment was paid one-third by the Huston Estate, one-third by the Martins and one-third by Civerolo. Thereafter, a contract was made with Roberson Construction Company to sell the property to Roberson Construction Company for the sum of $235,000.00. * * * none of the transactions had been presented to the Probate Court, although the funds of the estate were used for the purpose of making the purchase and the liability under the contract for the remainder of the purchase price, at least to the extent of one-third, had been imposed upon the estate although no security other than the land involved in the transaction was deposited to secure the unpaid balance. About six months later Mr. Cushing was contacted by the attorney for the purchaser, a Mr. Phillips, who had determined that he would require a motion and order authorizing the estate to make the purchase and a motion and order authorizing the estate to make the sale. On July 30, 1959, Mr. Cushing transmitted to the Probate Clerk of Lea County an application for the purchase and sale of certain property in Bernalillo County and simultaneous therewith an application for permission to sell and an Order of sale for the same property. The Probate Court was requested to sign these papers without a hearing, and a pencil notation was made on the bottom of the letter to the effect that the transaction involved a profit of $8,333.00 less interest and taxes over and above the $5,000.00 investment. * * * neither petition or Order in any way indicated the purchase contract had already been made or that a sales contract had already been made. As a matter of fact, the petition for the purchase recited that the estate had cash funds in various savings accounts drawing interest at the rate of 3% and that these funds could be used to greater advantage to the estate by the estate making the purchase and increasing the rate of return. Neither did the petition for the sale in any way indicate that a contract for the sale had already been executed by the estate and by interested parties.

"The County Clerk advised Mr. Cushing that the Court felt it would be necessary to present evidence in support of the petitions. After this information was conveyed to Cushing he called Martin, as Probate Judge, and attempted to get Martin to sign the Order without a hearing, but the Judge advised him that he felt a hearing was necessary. * * * in this conversation no explanation was made to the Court that the proposed transaction was already an accomplished fact. Thereafter a hearing was had in connection with the purchase and sale. The Court required that the guardian ad litem for the minor be changed, which was done, (Civerolo being a party interested in the transaction and the minor not being

otherwise represented), and on August 28th a letter was written in Albuquerque transmitting the Order appointing the new guardian and acceptance of C. D. Knight as guardian ad litem. On September 3rd Martin was in Albuquerque and called Cushing. There is no dispute but that Martin was in Albuquerque on unrelated business pursuant to an appointment theretofore made. This fact is testified to not only by Martin but by the witness Lloyd Smith and is corroborated by the evidence. * * * They (Cushing and Martin) made an arrangement to meet at a restaurant in Albuquerque and look at the property. Civerolo was in the office at the time Cushing made the appointment and had intended to go with Cushing for the purpose of showing the property to Martin, but became involved in matters and could not go. Martin and Cushing went in Cushing's car to view the property and Cushing showed him the layout and boundaries of the property. At this time Cushing relates that the following conversation occurred:

"Then we got back into the car and I said, 'Now, does that take care of everything?' And, he said, 'Yes, everything looks okay, but what is in it for me?' And, I said, 'What do you mean?' And, he said, 'Just that, what is in it for me?' And, I said, 'Well, you mean a case of whiskey or a golf bag?' (And, to digress there, he had told me that he was a golfer going out

and that he had played at Four Hills sometime this Spring.) And, so he said, 'No, I need money.' And I said, 'Well, I don't have it within my power to give you any money because I don't write any checks, I don't do anything with the estate; and, I further told him that if he knew my wife my control or power of suggestion to her would mean nil even if I would go along with it, which I didn't and I knew Mr. Civerolo wouldn't go along with it, but he told me that he had dropped $75,000 on a night club venture down there and that he needed money and specifically he said that he wanted $500. So, I just told him that all I could do was submit and if the people involved in the thing were interested it was strickly up to them, but it would not be at my suggestion that they go ahead and do it.'"

"They (Cushing and Martin) had lunch at the Chuck Wagon and went their separate ways. It developed on cross-examination that Cushing then submitted to Civerolo and to his wife the proposition of whether or not he was paying a $500.00 bribe, which they refused to do. The matter thereafter was reported by this witness to Judge Reidy and on the same day which was about the 9th of September, five or six days after the matter occurred, the story was related to Bill Sloan who was one of the Referees in the case. Cushing's story was reduced to writing and witnessed by Sloan. On the

14th of September, which was the Monday upon which the Order was signed, Mr. Jennings of the Grievance Committee, Mr. Skinner of the Grievance Committee, Mr. Nelson, Mr. Botts, together with Cushing were in Botts' office at Albuquerque. A call was made from this office to Martin in Lovington. Unknown to Martin, Mr. Botts, a respected member of the Bar of New Mexico, was listening on an extension to see what Martin had to say about the $500.00 bribe offer. * * * in the last conversation between Martin and Cushing, according to Cushing, he had advised Martin he would submit the proposition of the payment to his clients. The substance of the conversation was related by Mr. Botts in his testimony * * * and was substantially the same as the testimony of Cushing on this point. Botts and Cushing testified that they got Martin on the telephone and that Cushing asked Martin about the status of the papers because he was being pressed for time. Martin replied that the Orders had been signed and mailed and that he presumed they would be there within the next day or two. Nothing whatever was said about a proposition in respect to the $500.00. In this connection * * * Cushing did not in any way refer to the alleged conversation about the $500.00; did not advise Martin that his clients would not pay the money, and made no reference whatever to it although presumably the call was for the purpose of getting some kind of incriminating remark, suggestion or admission from Martin in the conversation. It could have had no other purpose under the circumstances under which it was made. On cross-examination Cushing clarified his testimony in respect to whether or not the offer for $500.00 was a requirement in order to obtain the signing of the Order and testified that there had been no suggestion by Martin at any time that he would not sign the Order unless he got the $500.00. On the contrary, the testimony was all to the effect that Martin was going to sign the Order regardless * * * of the fact that the $500.00 was not paid * * *.

"In addition to the witness Cushing * * * the only other witnesses who testified were Botts and Smith * * *. U. M. Rose, a distinguished member of the Lea County Bar, who testified to the good reputation of W. S. Martin, Jr. for ethics and honesty among the lawyers with whom he was associated in his home county, and W. S. Martin, Jr., whose testimony * * * consists of a clear, candid and unequivocal denial of any wrong in connection with the transaction or of any solicitation of a bribe.

"Martin further testified that at no time did he see the contract of purchase or of sale prior to the signing of the Order, but that both Cushing and Walker (the real estate agent) had represented to him at the hearing that the estate had no liability for the balance of the purchase price, a repre-

sentation not denied by Cushing and not sustained by the terms of the contract. Martin felt that a large amount of money was involved in the estate under his supervision in which a minor was involved, and that he was in Albuquerque and called Cushing for the purpose of having a clearer idea about the property in which they were proposing to invest the estate money on the basis of his authorization to do so. He testified that he was serving his second term as Probate Judge, and that he was Past-President of the Kiwanis Club at Lovington, Chairman of the Cancer Crusade, President of the Little Theatre, an active member of the Methodist Church and choir. * * * He further testified that he told the people (Cushing) that he would approve the transaction and that he did so at the same time he took care of his other probate business on September 14th, and related his activities as shown by his dairy in the intervening days."

The law is well settled in this jurisdiction that the evidence to sustain a charge of unprofessional conduct against a member of the bar, where in his testimony under oath he has fully and completely denied the asserted wrongful act, must be clear and convincing, and that degree of evidence does not flow from the testimony of one witness unless such witness is corroborated to some extent, either by facts or circumstances. In re Catron, 8 N.M. 253, 43 P. 724, 728; In re Marron, 22 N.M. 252, 160

P. 391, L.R.A.1917B, 378. Concerning the charge against him, the respondent did not assume a defensive attitude but under oath frankly and completely denied each incriminating fact contained in the charge.

In view of the rule, we have considered the evidence anew to determine its sufficiency and, from our review, corroboration of the witness Cushing cannot be found. Relator says, however, the mere presence of respondent in Albuquerque, as shown by the record, corroborates the witness. We think not; admittedly, he was there on unrelated business. On the other hand, respondent asserts that Cushing's failure to mention the money consideration, while Mr. Botts was listening in on the conversation, points unerringly to the fact that the charge against him was fabricated. He also suggests that Cushing's statement was a subterfuge in an effort to defraud the three purchasers of the property, and that Mr. Civerolo's refusal to participate therein frustrated his efforts in this regard. But, since we fail to find corroboration of the witness Cushing, respondent's position needs no discussion.

In In re Catron, supra, a somewhat similar case, this court had the following to say:

"* * * She said that he then offered to pay her money, give her assistance, be her friend, and give her help, if she would induce her sons to testify

in behalf of the Borregos, or not to testify against them. This is the statement made by her. This conversation occurred in the presence of the respondent and this woman alone. Nobody else was present. Respondent goes upon the stand, and positively, without hesitation, and without qualification, denies wholly and absolutely this statement. So we have, so far as this charge is concerned, the testimony of the woman Mrs. Baca, on the one side, and the testimony of the respondent, on the other. Under our views of the weight which should be attached to testimony, and the amount of evidence which should be required to establish and sustain a charge of this kind, we conclude that under this testimony, taking these two witnesses as they stand before us, assuming them to be of equal credibility, the prosecution in this charge have wholly failed to sustain the allegations made.

"* * * The respondent Catron denies absolutely that anything of this kind was done; denies that he offered any money, that he agreed to pay any money, or that he offered any kind of inducement to this witness to testify falsely or untruthfully in any way in this cause. The testimony upon this point is not corroborated by any other facts or any other circumstances. Therefore we say that, under this testimony, even if the witnesses were of equal standing, this charge is not to be sustained. * * *"

Before closing this opinion, we are impelled to notice that the Board of Commissioners of the State Bar of New Mexico, zealous of the integrity of the profession of which they are an essential part, did not permit the matter to be passed over unnoticed. Indeed, the gravity of the charge called for a full and complete investigation, and they are to be commended for having fairly and conscientiously discharged an unpleasant self-imposed duty.

We conclude that the evidence does not present that degree of proof to warrant the disbarment of the respondent. It follows, therefore, the charge against him should be dismissed.

It is so ordered.

CARMODY, MOISE and CHAVEZ, JJ., concur.

NOBLE, J., not participating.