238 So.2d 594 (1970)
THE FLORIDA BAR, Complainant,
v.
Morey A. RAYMAN and John H. Duhig, Respondents.
No. 37506.
Supreme Court of Florida.
April 22, 1970.
Rehearing Denied June 26, 1970.
*595 L. Norton Preddy, Miami, for The Florida Bar, complainant.
Lee Weissenborn, of Weinstein, Weissenborn & Burr, Miami, for respondents.
PER CURIAM.
This case is before the Court on petition of Morey A. Rayman and John H. Duhig, respondents, to review the judgment entered by the Board of Governors of The Florida Bar on June 12, 1968. Said judgment reads as follows:
"This cause came on for review and consideration by the Board of Governors of The Florida Bar upon the report of the referee and record of proceedings before him.
"The Complaint of the Florida Bar charged that the respondents as partners represented one Alex Adler who was appointed curator of the estate of one Meyer Adler, deceased. The Complaint further charged that during the course of said proceedings in the County Court for Dade County, Florida, the accused lawyers solicited from the heirs of the decedent the sum of $4,000 each for the stated purpose of making payment in that amount to the presiding judge for the purpose of influencing his decision in a will contest which had developed in the course of the administration of said estate. The Complaint further charged that the respondents actually received approximately $5,000 from their client, Alex Adler, to be used to influence the decision of said judge. The Complaint further charged that the respondents, after receipt of said funds, retained them for their own purposes and have not accounted for said funds to the Court, to their client nor to the heirs of said estate.
"After trial, the referee found the respondents guilty as charged. He recommended that they be disbarred.
"The Board of Governors after consideration and discussion concurs in and adopts the findings and recommendations of the referee. It is accordingly,
"ORDERED and ADJUDGED that the respondents, Morey A. Rayman and John H. Duhig, be disbarred and that they pay the costs of these proceedings in the amount of $1,060.50."
Respondents contend that the Board of Governors erroneously adopted the findings and recommendations of the referee on several grounds. First, it is contended that the evidence adduced was insufficient to support the charges made against them. Secondly, it is contended that the proceedings before the referee deprived the respondents of basic rights protected by both the State and Federal Constitutions.
The constitutional issues advanced relate to the validity of Integration Rule 11.06(7) of The Florida Bar, 32 F.S.A. in view of the United States Supreme Court's decision in Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), holding that lawyers are no less entitled to self-incrimination protection in disbarment proceedings than in any other civil or criminal action; and, therefore, refusal to testify in a disciplinary proceeding cannot be ground for invoking the sanction of disbarment. The cited rule requires an attorney to appear and give testimony when subpoenaed on pain of being held in contempt of court. The other constitutional issue is based on the United States Supreme Court's decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in which the court reversed a conviction predicated upon evidence gained through electronic eavesdropping conducted by federal agents outside a phone booth from *596 which that defendant placed his calls. The Katz argument is directed at that portion of the evidence in the instant case which consists of a tape recording surreptitiously made of a conversation between the complaining witness and the respondent Duhig.
While we take note of these serious constitutional questions, we find it unnecessary to rest our decision upon their determination since this proceeding can be disposed of on the nonconstitutional ground centering on the claim that the evidence is insufficient to sustain the charges. The well established rule requiring disposition of a case without adjudicating the constitutional questions whenever possible, see Clay v. Sun Insurance Office, Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), is equally applicable in disciplinary proceedings.
An extensive evidentiary hearing was conducted during which both respondents steadfastly denied[1] both the purpose and the receipt of the funds claimed to have been given them by the complaining witness, Alex Adler, brother of the decedent. Instead both respondents contend that these charges stem from confusion in the elderly complainant's mind as to the amount of money he could expect to heir from his deceased brother's estate since the round figures involved are within the range of his share of the estate had the court held that the decedent died intestate.
The respondents argue that the evidence in the record when taken in its entirety does not constitute sufficient proof of the acts and motives ascribed to them to justify the judgment against them. The inconsistencies and contradictions found by the court in the evidence relating to crucial questions of fact require us to agree. We recognize that a disciplinary proceeding against an attorney is not a criminal trial; and, therefore, the quantum of proof necessary to disbar need not be the classical "beyond and to the exclusion of a reasonable doubt" standard. Yet the quantum of proof suggested by a mere "preponderance of the evidence" as is the case in ordinary civil proceedings does not seem to wholly satisfy the requirements of a proceeding such as this. In Zachary v. State, 53 Fla. 94, 43 So. 925 (1907), this court reversed a judgment of disbarment entered by a circuit court holding that where the evidence is conflicting "there must be a clear preponderance against [the accused attorney]". The trial judge in Zachary had held in the judgment of disbarment that the allegations were sustained by a "preponderance of the evidence", yet on appellate review it was held that the quantum or standard of proof was something more than "preponderance". More recently in State ex rel. Florida Bar v. Bass (1958) 106 So.2d 77, we stated that the power to disbar should be exercised only in a clear case for weighty reasons and on clear proof. In Bass, the court discussing the evidence of deceit charged to the respondent reversed stating that the evidence was not "sufficiently clear and convincing to justify the Board in overturning the findings of fact of the Referee, *597 made on the basis of conflicting evidence" at page 78. In State ex rel. Florida Bar v. Junkin, 89 So.2d 481 (Fla. 1956), we held that evasive and inconclusive evidence which was given by the complaining witness was insufficient to sustain the disbarment judgment recommended by the Referee.
Our review of the standard of proof required in other states in disciplinary proceedings discloses a frequent requirement of something more than a simple preponderance of evidence standard as found in civil practice yet not imposing the more stringent and difficult to attain standard universally recognized in our criminal practice. In State of Nebraska ex rel. Nebraska State Bar Association v. Nielsen (1965) 179 Neb. 55, 136 N.W.2d 355, the Nebraska Supreme Court stated the view that findings to sustain disbarment must be sustained by a higher degree of proof than that required in civil actions, yet falling short of the proof required to sustain a conviction in criminal prosecutions. The Supreme Court of New Mexico in In re Martin, 67 N.M. 276, 354 P.2d 995, in a disbarment proceeding considered the quantum of proof necessary to sustain charges against a probate judge accused of accepting a bribe to influence his decision in a pending case. There, the court more fully articulated the "clear and convincing" standard referred to in the above cited Florida cases in the following manner:
"The law is well settled in this jurisdiction that the evidence to sustain a charge of unprofessional conduct against a member of the bar, where in his testimony under oath he has fully and completely denied the asserted wrongful act, must be clear and convincing and that degree of evidence does not flow from the testimony of one witness unless such witness is corroborated to some extent either by facts or circumstances." p. 998
Respondents' claim of insufficiency of evidence rests principally on the crucial inconsistencies in the evidence presented to the Referee. According to the testimony of the complainant, he made a cash payment to the respondent Duhig in the amount of $2,608 on January 2, 1965, with the express understanding that the said money was for the purpose of being given to the probate judge to influence his decision. He also stated that on January 12, 1965, he gave a check made payable to himself from a stock brokerage firm to the respondent Rayman. Said check was for $2,392.22, and the complainant testified that he saw Rayman cash the check at the drawee bank located in the same building as the brokerage firm and that then the said respondent departed with the money. This evidence standing alone was certainly sufficient to support the Referee's finding that each of the respondents received the respective sums of money. However, the complainant's testimony did not stand alone. There was also testimony from an attorney whom the complainant sought to retain to bring a civil suit to recover $5,000 from the respondent Rayman. That witness testified that the complainant told him that he had given the entire $5,000 directly to Rayman. No objection was made to this testimony nor was there any effort to explain the inconsistencies. When the giving of money to influence official action is charged, the question of to whom the money was given is crucial and should be shown with clear and convincing evidence free of substantial doubts or inconsistencies.
A further discrepancy appears in the evidence as to the alleged payment of the proceeds from the brokerage check to respondent Rayman. It was endorsed by the complainant only, yet he stated Rayman cashed it at the bank. The latter's name, however, does not appear on the check. This is inconsistent with the presumption that when a check is paid by the bank on which it is drawn, it is presumed that payment was made to the endorser. 70 C.J.S. Payment § 109 a. While said presumption is not irrefragable, it certainly should be accorded more than passing significance.
The evidence relating to the purpose for which the money was allegedly given to the *598 respondents was also in substantial conflict. The complainant's own testimony was self-contradictory in that at times he stated the money was to be given to a judge, while at other times he denied that the purpose was to give a bribe or to "buy a judge" as he put it.
While we cannot say that there was no evidence to support the referee's findings, we are constrained to the view that much of the supportive testimony is itself evasive and inconclusive so that when it is considered together with the above recited inconsistencies, the evidence does not establish the charges with that degree of certainty as should be present in order to justify a finding of guilt on charges as serious as those made against these respondents.
Both of these respondents have had lengthy careers as attorneys and have established reputable positions in their home communities. There appeared to attest to their credibility and integrity no less than three circuit judges before whom the respondents had practiced for many years as well as the senior judge of the probate court wherein was pending the estate matter out of which the herein charges allegedly arose. All of these distinguished jurists declared their full and total confidence in the reliability and integrity of the respondents; and while, of course, such attestations are not controlling in disciplinary matters of this kind, they are deserving of serious consideration as we perform the delicate function of reconciling the conflicts of evidence such as those found in this record.
The charges brought against the respondents are of the most serious which can be ascribed to an attorney. It goes without saying that there can be no temporizing with an offense the commission of which serves to destruct the judicial process. As judges and lawyers, it is one of our highest duties to eliminate from our ranks those guilty of so serious an offense. Concomitant therewith, however, we have a continuing duty to require charges such as these to be supported by clear and convincing evidence where the charges have been denied by reputable members of the Bar.
We conclude that the evidence does not present that degree of proof necessary to warrant the findings of guilt and consequent disbarment.
Accordingly, the judgment of the Board of Governors is vacated and the charges dismissed.
CARLTON, ADKINS and BOYD, JJ., and SPECTOR, District Court Judge, concur.
ROBERTS, Acting C.J., dissents.
DREW and THORNAL, JJ., dissent and would approve the judgment of the Board of Governors.
NOTES
[1] It is of at least passing interest that the respondent Rayman, while testifying pursuant to a subpoena before the Grievance Committee made the following statement:

"I openly and with no reservations ask that I be given a polygraph test by anyone that you gentlemen designate. I am very much concerned with all this. I would like an opportunity to wipe away any doubt on any of this."
While we recognize that offers of willingness or unwillingness to take polygraph tests are not admissible as such, there now seems to be no question that Florida is among a growing minority of jurisdictions which permit evidence arising out of polygraph tests freely and voluntarily made where the parties stipulate to such tests. Apparently, respondent's offer to so submit himself was not accepted inasmuch as the record of the proceedings before the Grievance Committee or the referee makes no further mention of the respondent's offer. See Roberts v. State, 195 So.2d 257 (Fla.App.); State v. Brown, 177 So.2d 532 (Fla.App.); Johnson v. State, 166 So.2d 798 (Fla.App.); but cf. Kaminski v. State, 63 So.2d 339 (Fla. 1953).