2006-NMSC-041

142 P.3d 905

### In the MATTER OF ROBERT MATTHEW BRISTOL,

**An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

**No. 29,341.**

Supreme Court of New Mexico.

Sept. 6, 2006.

Joel L. Widman, Deputy Disciplinary Counsel, Albuquerque, NM, for Petitioner.

Nancy Cusack, Esq., Santa Fe, NM, for Respondent.

## OPINION

PER CURIAM.

{1} In this attorney disciplinary proceeding, we are called upon to clarify the standard of review to use when reviewing recommendations for sanctions under the Rules Governing Discipline. In so doing, we must resolve conflicting findings, conclusions and recommendations for discipline issued by two separate bodies—a hearing committee and a hearing panel—both appointed by the Disciplinary Board to conduct two different types of hearings during the course of this proceeding. For the reasons that follow, we determine that attorney Robert Matthew Bristol (Respondent) should be publicly censured for his violations of our Rules of Professional Conduct.

## PROCEDURAL OVERVIEW

{2} Under our Rules Governing Discipline, when a formal disciplinary proceeding is initiated against an attorney, the chairman of the Disciplinary Board, or his designee, shall forthwith designate a hearing officer or a hearing committee to hear the matter. *See* Rule 17–309(C) NMRA; Rule 17–313 NMRA. The hearing committee may be comprised of New Mexico attorneys and non-lawyer members of the public. *See* Rule 17–104(A) NMRA. The role of the hearing committee culminates with the issuance of "its findings of fact, conclusions and recommendations for discipline or other disposition of the matter," which are submitted directly to the Disciplinary Board. *See* Rule 17–313(D)(8).

{3} Upon receipt of the findings, conclusions and recommendations of the hearing committee, the chair of the Disciplinary Board shall appoint one or more members of the board to serve as a hearing panel to review the recommended decision of the hearing committee. *See* Rule 17–314(A) NMRA. The hearing panel may allow oral argument or the submission of briefs, but the hearing panel is limited to considering the evidence of record presented to the hearing committee and may not accept additional evidence. *See* Rule 17–314(B) and (C). In conducting its review, the "[hearing] panel may accept, reject or modify or increase the sanctions contained in the recommendations of the hearing committee." *See* Rule 17–315 NMRA. However, the hearing panel "is not restricted to the findings of the hearing committee and may render its decision based upon the record and any additional findings that it may make." *Id.* If the hearing panel recommends disbarment, suspension, public censure, or probation by this Court under Rule 17–206 NMRA as the appropriate disciplinary sanction, it shall prepare a written report and recommendation to that effect and file it with this Court. *See* Rule 17–315(C).

{4} Depending on the type of disciplinary recommendation from the hearing panel, review by this Court may be sought by the

filing of a request for hearing or petition for hearing. *See* Rule 17–316(A) NMRA. Upon review, this Court may accept or reject some or all of the hearing panel's findings, conclusions or recommendations, and may impose the recommended discipline or impose a greater or lesser discipline than what was recommended by the hearing panel. *See* Rule 17–316(D).

{5} In this case, a hearing committee of the Disciplinary Board found that Respondent violated the Rules of Professional Conduct and recommended that Respondent receive an informal admonition. After reviewing the findings, conclusions and recommendations of the hearing committee, a hearing panel of the Disciplinary Board issued its own findings and conclusions, recommending to this Court the more severe disciplinary sanction of suspension from the practice of law for six months.

{6} Respondent then requested a hearing before this Court pursuant to Rule 17–316(A)(1), which we granted. At the conclusion of the hearing before this Court, and in a written order we subsequently issued, we adopted the findings of fact of the hearing committee rather than those of the hearing panel. However, we decided that Respondent should receive a public reprimand instead of the informal admonition recommended by the hearing committee or the suspension recommended by the hearing panel.

{7} Public reprimands are issued in two forms under our Rules Governing Discipline- formal reprimands issued through our Disciplinary Board and public censures issued directly by this Court. *Compare* Rule 17–206(A)(5), *with* Rule 17–206(A)(4). We directed disciplinary counsel and Respondent's counsel to work together to prepare a draft formal reprimand. However, counsel ultimately submitted separate draft reprimands to this Court because they could not agree on the substance of the reprimand. Because the parties could not agree on the substance of the formal reprimand to be issued against Respondent, and to bring these disciplinary proceedings to a conclusion, we issue the reprimand as a public censure from this Court. And because this case also has prece-

dential value, the public censure is included as part of this Opinion issued pursuant to Rule 17–206(D) and Rule 17–316(D).

**FACTUAL BACKGROUND**

{8} Formal disciplinary proceedings were initiated against Respondent based on actions he took during his representation of a married couple who wanted to file for bankruptcy. During the course of preparing the bankruptcy petition and related bankruptcy schedules, Respondent discovered that the wife (the debtor) had an interest in a house in Roswell, New Mexico, that she received in a divorce proceeding involving a prior marriage. However, the nature of her interest in the house was unclear.

{9} After an initial investigation into the matter, Respondent advised the debtor to list her interest in the house on the personal property bankruptcy schedule as a life estate with a value of one dollar. Respondent subsequently learned that the marital settlement agreement from the divorce proceeding gave the debtor more than a life estate in the house and concluded the debtor would need to amend her bankruptcy schedules accordingly. However, Respondent failed to take steps to ensure that the relevant bankruptcy schedules were amended to reflect the debtor's true interest in the house before the bankruptcy proceeding was closed.

{10} Subsequently, the bankruptcy trustee filed a complaint to revoke the debtor's discharge in bankruptcy because of her failure to disclose her true interest in the house. In addition to revoking the debtor's discharge, the bankruptcy judge chastised Respondent for his role in misleading the court and referred the incident to the Disciplinary Board for further investigation.

{11} At issue below in this disciplinary proceeding was whether Respondent's failure to accurately disclose to the bankruptcy court the extent of the debtor's interest in the house violated our Rules of Professional Conduct. The hearing committee concluded that Respondent's failure to amend the bankruptcy schedules after determining the debtor's ownership interest in the house violated Rule 16–103 NMRA (requiring a lawyer to "act with reasonable diligence and

promptness in representing a client"), and Rule 16–303(A)(2) NMRA (prohibiting a lawyer from knowingly failing "to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client"). However, the hearing committee also concluded that Respondent's actions were the result of mistake and negligence, did not involve dishonesty, fraud, deceit, or misrepresentation, and were caused in part by the debtor's failure to cooperate with Respondent to amend the bankruptcy schedules. Accordingly, the hearing committee recommended that Respondent only receive a private, informal admonition as his disciplinary sanction for violating our Rules of Professional Conduct.

{12} In contrast to the hearing committee, the hearing panel appointed to review the recommendation of the hearing committee took a much harsher view of Respondent's actions. In addition to the rule violations identified by the hearing committee, the hearing panel concluded that Respondent violated several additional Rules of Professional Conduct implicating his competence and fitness to practice law. Most significantly, and contrary to what the hearing committee concluded, the hearing panel concluded that Respondent violated Rule 16–804(C) NMRA by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Ultimately, the hearing panel filed its final report and recommendation with this Court recommending the suspension of Respondent from the practice of law for six months. For the reasons that follow, we reject the hearing panel's recommendation, adopt the hearing committee's findings of fact, and independently determine that a public censure is the appropriate level of discipline for Respondent's misconduct.

## DISCUSSION

{13} The decision of the hearing panel specifically states that it replaces the findings and conclusions of the hearing committee with the hearing panel's own findings and conclusions because "the findings of the hearing committee are incomplete and some of the findings of the hearing committee are not supported by substantial evidence." However, the hearing panel's decision does not specify the findings of the hearing committee that the hearing panel believed lacked substantial evidence, nor does the decision of the hearing panel discuss why the findings of the hearing committee were incomplete. As we explain below, the hearing panel does have the authority to issue its own findings under limited circumstances. But when it does so in future cases, review by this Court will be facilitated if the hearing panel explains in its report and recommendation to this Court why it has decided to reject or supplement the findings of a hearing committee. Lacking such an explanation in this case, we are left to infer from the hearing panel's findings why it believed that the findings of the hearing committee were inadequate or incorrect.

{14} By comparing the findings, conclusions and recommendations of the hearing committee with those of the hearing panel, it is apparent to us that the hearing committee and hearing panel diverged on one central point—whether Respondent's acts and omissions during the course of the bankruptcy proceeding were the product of simple negligence or calculated deceit. Although the hearing committee found that Respondent's ethical lapses were the result of mistake and negligence but nothing more, the hearing panel concluded otherwise. But in doing so, the hearing panel overstepped its role as the administrative reviewer of the hearing committee's factual findings. To explain why we have reached this conclusion, we must first clarify the standard of review a hearing panel should use when reviewing the findings, conclusions and recommendations of a hearing committee.

## A DEFERENTIAL STANDARD OF REVIEW SHOULD BE USED BY THE HEARING PANEL TO REVIEW THE HEARING COMMITTEE'S FINDINGS OF FACT

{15} As noted above, the hearing committee is the only entity designated to take evidence during the course of a formal disciplinary proceeding. *See* Rule 17–314(C); *see also* Rule 17–313. Because the hearing committee directly observes witness testimony, it is in the best position to weigh the evidence, resolve matters of credibility, and choose between the conflicting inferences that may be

drawn from the evidence. *See Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377, 381 (W.Va.1994) (recognizing that a hearing committee is in a better position to resolve factual disputes because it "hears the testimony of the witnesses firsthand and, being much closer to the pulse of the hearing, is much better situated to resolve such issues as credibility"); *accord In re Clark*, 207 Ariz. 414, 87 P.3d 827, 830 (2004); *In re Pautler*, 47 P.3d 1175, 1179 (Colo.2002); *Notopoulos v. Statewide Grievance Comm.*, 277 Conn. 218, 890 A.2d 509, 516 (2006); *In re Reardon*, 759 A.2d 568, 575 (Del.2000); *In re Spak*, 188 Ill.2d 53, 241 Ill.Dec. 618, 719 N.E.2d 747, 754 (1999); *In re Saab*, 406 Mass. 315, 547 N.E.2d 919, 927 (1989); *Grievance Adm'r v. August*, 438 Mich. 296, 475 N.W.2d 256, 260 (1991); *In re Reiner's Case*, 152 N.H. 594, 883 A.2d 315, 318 (2005); *Pappas v. Va. State Bar*, 271 Va. 580, 628 S.E.2d 534, 537 (2006); *In re Poole*, 156 Wash.2d 196, 125 P.3d 954, 959 (2006); *In re Alia*, 288 Wis.2d 299, 709 N.W.2d 399, 413–14 (2006); *N.C. State Bar v. Gilbert*, 151 N.C.App. 299, 566 S.E.2d 685, 690 (2002).

■ {16} Because the hearing committee is the entity responsible for taking evidence in disciplinary proceedings, we view its role much the same as any other fact finder that should be given deference on questions of fact. *See In re Witt*, 145 Ill.2d 380, 164 Ill.Dec. 610, 583 N.E.2d 526, 531 (1991) (providing that the findings of fact made by the disciplinary entity responsible for taking evidence "are entitled to the same weight as are the findings of any initial trier of fact"); *cf. N.M. State Bd. of Psychologist Exam'rs v. Land*, 2003–NMCA–034, ¶ 5, 133 N.M. 362, 62 P.3d 1244 (noting that when a district court acts in an appellate capacity to review an administrative agency's factual determinations, the court's "standard of review is limited in the same manner as any other appellate body" and it "must view the evidence in the light most favorable to the decision of the agency and must defer to the agency's factual determinations if supported by substantial evidence"). Consistent with the foregoing authorities, we hold that when reviewing the findings of a hearing committee, the hearing panel should defer to the hearing committee on matters of weight and credibility, viewing the evidence in the light most favorable to the hearing committee's decision and resolving all conflicts and reasonable inferences in favor of the decision reached by the hearing committee.

■ {17} We recognize that despite this standard of review, our Rules Governing Discipline provide that the hearing panel "is not restricted to the findings of the hearing committee and may render its decision based upon the record and any additional findings that it may make." Rule 17–315. Nevertheless, the hearing panel's authority to make additional findings does not allow it to ignore the standard of review set forth above. Instead, the hearing panel's authority to make additional findings should be limited to factual issues not considered by the hearing committee or to situations where the hearing committee's findings are not supported by substantial evidence. We realize that the hearing panel in this case issued its own findings of fact in the belief that the hearing committee's findings were incomplete and unsupported by substantial evidence. However, as discussed later in this opinion, we believe the hearing panel misapplied its standard of review and, as a result, erred in substituting its own findings of fact for those of the hearing committee.

### THE HEARING COMMITTEE'S LEGAL CONCLUSIONS AND RECOMMENDATIONS FOR DISCIPLINE ARE REVIEWED UNDER A *DE NOVO* STANDARD OF REVIEW

■ {18} In contrast to the deference that a hearing committee's factual findings should be afforded, the hearing panel is not bound by the hearing committee's legal conclusions or recommendations for discipline and reviews such matters independently under a *de novo* standard of review. *See McCorkle*, 452 S.E.2d at 380–81. In this regard, the hearing panel should give "respectful consideration" to the decision of the hearing committee but remains free to draw its own legal conclusions and independent recommendations for discipline. *Id.* at 380 n. 6, 452 S.E.2d 377 (using the term "respectful con-

sideration" to recognize the important role played by the committee in the disciplinary process, without circumscribing the reviewing entity's responsibility to independently apply the law and determine the appropriate level of discipline).

## THE HEARING PANEL MISAPPLIED THE STANDARD OF REVIEW TO THE HEARING COMMITTEE'S FINDINGS OF FACT

■ {19} As noted above, the competing sets of findings of fact reflect that the hearing panel disagreed with the hearing committee's assessment of Respondent's intent in failing to accurately represent the debtor's interest in the Roswell house. While the hearing committee found that Respondent's failures were the product of mistake and inadvertence, the hearing panel found that Respondent's actions were the product of fraud, deceit, and dishonesty. However, Respondent's mental state is a quintessential question of fact. *See In re Clark*, 87 P.3d at 830 ("Determining a person's mental state requires the resolution of questions of fact."). And for the reasons that follow, we believe the hearing panel erred by reweighing the evidence and substituting its judgment for that of the hearing committee on that critical question of fact.

■ {20} As an example of the hearing panel's improper reweighing of the evidence, the hearing panel apparently relied on portions of the debtor's testimony to find that Respondent knew before filing the bankruptcy petition that the debtor's interest in the Roswell house was greater than a life estate and worth more than one dollar. However, Respondent denied receiving such information from the debtor before filing the petition. By instead relying on the debtor's version of events, the hearing panel implicitly found that the debtor's testimony was more credible than Respondent's testimony. In so doing, the hearing panel erred by reweighing the evidence in this manner.

{21} Similarly, the hearing panel's findings recite portions of the debtor's marital settlement agreement and rely on comments by the bankruptcy court judge to establish that Respondent should have clearly known from reviewing the marital settlement agreement that the debtor had a greater interest in the Roswell house than what was listed in the bankruptcy schedules. However, the hearing panel's findings seem to ignore testimony from Respondent and the debtor's prior attorney suggesting that the marital settlement agreement contained ambiguities regarding the enforceability and true value of the debtor's right to the house. Moreover, the hearing panel's findings fail to acknowledge that upon reviewing the marital settlement agreement, Respondent himself recognized that the bankruptcy schedules would need to be amended. Again, the hearing panel improperly substituted its judgment on a question of fact by reweighing the evidence.

{22} What was truly at issue was whether Respondent negligently or intentionally failed to make those amendments. In an apparent effort to show that Respondent acted intentionally, the hearing panel's findings refer to a letter that Respondent sent the debtor advising that they delay asking the debtor's ex-husband to sell the house under the terms of the marital settlement agreement until after the first creditor's meeting. The letter also suggested that the debtor should be able to retain the proceeds at that time. To the extent that the hearing panel relied on this letter as evidence of a dishonest intent on Respondent's part, such reliance ignores other evidence in the record regarding Respondent's intent.

{23} In particular, Respondent himself stated that one reason he did not pursue a sale of the house sooner was that he did not have the support staff to assist him in commencing litigation in the domestic relations proceeding prior to the creditor's meeting. He also testified that he did not want to bring up the issue of the house at the creditor's meeting because he was concerned about causing an emotional confrontation between the debtor and her ex-husband at the creditor's meeting. Moreover, Respondent believed that any money the debtor would receive from the sale of the house would be exempt from the bankruptcy proceeding under a "wild card" exemption the debtor was entitled to claim under federal bankruptcy law. In short, irrespective of whether Re-

spondent's advice was sound, by suggesting that Respondent's letter to the debtor revealed a dishonest motive, the hearing panel failed to view the evidence in the record in the light most favorable to the hearing committee's findings.

{24} The hearing panel's findings also attempt to cast doubt on Respondent's actions at the creditor's meeting. In this regard, there was evidence that Respondent failed to advise the trustee about the debtor's true interest in the house even though the trustee specifically asked the debtors during the creditor's meeting whether they had any real property. Respondent testified that he did not hear the trustee's question during the hearing and may have been distracted because he had numerous other hearings that day. In support of this explanation, the record also showed that creditor's meetings are very fast-paced with approximately forty to seventy cases on any given day. Although the hearing panel apparently discounted this explanation by pointing out that Respondent made other statements during the hearing clarifying other parts of the debtor's petition, by doing so the hearing panel erred again by reweighing the evidence and drawing inferences in the light least favorable to the hearing committee's decision rather than in the light most favorable.

{25} In summary, as detailed above, there was conflicting evidence regarding Respondent's motivations for delaying, and ultimately, failing to amend the bankruptcy schedules to accurately state the debtor's interest in the Roswell house. But by finding that Respondent acted with dishonest motive, the hearing panel improperly reweighed the evidence and substituted its judgment for that of the hearing committee on a question of fact. *See In re Brodsky,* 2003 WL 22793917 *3 (Ill.Atty.Reg.Disp.Com.) (recognizing that it would be improper during an intermediate administrative review in a disciplinary proceeding "to reverse simply because another conclusion is possible, or because the Review Board might have reached a different conclusion if it had been called upon to find the facts in the first instance"). Because the hearing panel's improper findings of fact formed the basis for its legal conclusions

regarding which Rules of Professional Conduct Respondent violated, we also reject those conclusions. We, therefore, proceed to our own assessment of the hearing committee's findings, conclusions and recommendations.

## THE SUPREME COURT USES THE SAME STANDARD OF REVIEW THAT THE HEARING PANEL MUST USE

 {26} As the final entity responsible for reviewing recommendations for disciplinary sanctions, this Court employs the same standard of review that the hearing panel should have used. *See In re Timpone,* 157 Ill.2d 178, 191 Ill.Dec. 55, 623 N.E.2d 300, 308 (1993) (indicating that the Supreme Court uses the same deferential standard of review on questions of fact as its administrative review board in disciplinary proceedings). We recognize that prior opinions of this Court could be construed to apply varying standards of review in disciplinary proceedings. *See, e.g., In re Richards,* 1997–NMSC–035, ¶¶ 3, 16, 123 N.M. 579, 943 P.2d 1032 (noting that the Court may accept or reject any or all findings of the hearing committee and determining that the findings of the hearing committee are supported by the record on appeal); *In re Patton,* 86 N.M. 52, 54, 519 P.2d 288, 290 (1974) (noting that the findings and recommendations of the hearing committee are entitled to great weight but the disciplinary board is not bound by the recommendations of the hearing committee and the Supreme Court gives great weight to the recommendations of the disciplinary board, but is not bound by them); *In re Moyer,* 77 N.M. 253, 255–56, 421 P.2d 781, 783–84 (1966) (approving the recommendations of the Board of Bar Commissioners after concluding that its findings were "fully supported" by a careful review of the whole record); *In re Southerland,* 76 N.M. 266, 268, 414 P.2d 495, 496 (1966) (providing that disciplinary recommendations are not controlling upon the Court but are entitled to great weight); *In re Martin,* 67 N.M. 276, 281, 354 P.2d 995, 998 (1960) (considering evidence "anew" to determine its sufficiency when reviewing a disciplinary recommendation); *In re Gibson,* 35 N.M. 550, 566–67, 4 P.2d 643, 651 (1931) (stating that findings and recommendations in disciplinary

proceeding are considered recommendatory in character with plenary power in the Supreme Court to examine the entire case anew and render judgment as the facts warrant).

{27} Although some of our cases indicate that we are not bound by the disciplinary recommendations we receive, we take this opportunity to make clear that we do not defer to recommendations regarding what level of discipline is appropriate. That decision remains ours to make independently as the final arbiter of attorney discipline without requiring us to defer to the legal conclusions and recommendations of either a hearing committee or hearing panel. However, when reviewing the factual findings of the hearing committee, we follow the same deferential standard of review set forth above that every hearing panel must follow.

{28} Accordingly, viewing the evidence in this case in the light most favorable to the hearing committee's findings of fact, we hold that there was substantial evidence to support the hearing committee's findings of fact for the reasons set forth above. And because the hearing committee found that Respondent acted negligently rather than intentionally, we agree with the hearing committee's conclusion that Respondent's conduct violated Rule 16–103 because he failed to act with reasonable diligence to make the bankruptcy court aware of the fact that amendment to the pertinent schedules would be required. Similarly, Respondent's lack of diligence violated Rule 16–103 because he failed to make the debtor aware of the legal ramifications of her failure to cooperate in amending the bankruptcy schedules in order to set forth her interest in the Roswell house.

{29} However, to the extent that the hearing committee concluded that Respondent's conduct also violated Rule 16–303(A)(2) because he failed to disclose the debtor's interest in the Roswell house, we disagree. Rule 16–303(A)(2) prohibits an attorney from knowingly failing to disclose a material fact to the court when necessary to avoid assisting the client with a criminal or fraudulent act. Because the hearing committee found that Respondent acted negligently and not intentionally, and because that find-

ing was supported by substantial evidence, the hearing committee's conclusion that Respondent knowingly acted within the meaning of Rule 16–303(A)(2) is erroneous. *See In re Clark,* 87 P.3d at 830 (noting that it would be error to conclude that ethical rules prohibiting knowing or intentional misconduct are violated when an attorney's unethical conduct is merely negligent). Nonetheless, having concluded that Respondent's conduct did violate our Rules of Professional Conduct in other respects, we now turn to the appropriate disciplinary sanction to impose.

{30} Unlike questions of fact, as noted above, the level of discipline to impose is a matter that this Court, and the hearing panel, considers independently under a *de novo* standard of review. In this case, the hearing committee recommended that Respondent receive a private, informal admonition. In contrast, the hearing panel recommended suspension from the practice of law for six months. We reject both recommendations and independently conclude that Respondent's behavior warrants the intermediate sanction of a public censure.

{31} As previously discussed, Respondent's intent was the central factual question at issue below. We have already held that the hearing committee's factual findings in this regard are supported by substantial evidence. Accordingly, we must accept as a matter of fact that Respondent acted negligently, but not intentionally, when he failed to ensure that the debtor's bankruptcy schedules were amended to accurately reflect the debtor's real property interest. *In re Clark,* 87 P.3d at 830 ("In disciplinary proceedings, a respondent's mental state can both determine whether an ethical violation occurs and affect the appropriate discipline for a violation.").

{32} Under the ABA Standards for Imposing Lawyer Sanctions (1986, as amended 1992) (ABA Standards), suspension from the practice of law is ordinarily only warranted when an attorney acts intentionally with a dishonest, deceitful, or fraudulent motive. *See ABA Standards* § 4.42 (providing that suspension is generally warranted when a lawyer knowingly fails to perform services

for a client and causes injury or potential injury to the client); § 6.12 (providing that suspension is generally warranted when a lawyer knowingly submits false statements or documents to the court, fails to take remedial action, and causes injury or potential injury to a party to the proceeding); *see also In re Key,* 2005–NMSC–014, ¶ 5, 137 N.M. 517, 113 P.3d 340 (recognizing that this Court looks to the ABA Standards for guidance in determining appropriate lawyer disciplinary sanctions). Because the hearing committee did not find that Respondent possessed a culpable mental state, we reject the hearing panel's recommendation that Respondent be suspended from the practice of law.

{33} Although the hearing committee recommended that Respondent receive a private, informal admonition, under the *ABA Standards,* a private reprimand is only appropriate when the attorney acts negligently rather than intentionally, and the attorney's actions cause little or no harm to the client. *See ABA Standards* § 4.44 (providing that an admonition is generally appropriate when a lawyer's lack of diligence is the result of negligence that causes little or no injury to the client); § 6.14 (providing that an admonition is generally appropriate when a lawyer negligently submits a false statement or document to the court in an isolated instance and causes little or no injury to a party or the proceeding). However, in this case, the hearing committee found that Respondent's acts and omissions contributed to the revocation of the debtor's discharge in bankruptcy. Consequently, even though Respondent acted negligently and without a culpable mental state, Respondent's conduct nevertheless caused significant harm to the debtor. Accordingly, we reject the hearing committee's recommendation for an informal admonition and instead independently determine that a public censure is the appropriate level of discipline. *See ABA Standards* § 4.43 (providing that a reprimand is generally appropriate when a lawyer's lack of diligence is the result of negligence that causes injury or potential injury to the client); § 6.13 (providing that a reprimand is generally appropriate when a lawyer negligently submits a false statement or document to the court and causes injury or potential injury to a party or the proceeding).

## CONCLUSION

{34} By this public censure, Respondent is reminded that the license to practice law is a conditional privilege. *See* Preface to the Rules Governing Discipline; Rule 17–205 NMRA. As a condition to that privilege, Respondent has the duty to act at all times, both professionally and personally, in conformity with our Rules of Professional Conduct. While Respondent may not have acted with deceit or dishonesty, his conduct cannot be condoned. Respondent was aware of the need to correct the inaccuracies contained in the documents he filed with the bankruptcy court. Even though the debtor did not facilitate making those corrections, that does not excuse Respondent's lack of diligence. As an officer of the court and the debtor's attorney, Respondent was responsible for taking whatever steps were necessary to properly inform the court and protect his client's interests. But by doing nothing, Respondent failed to meet his duty to the court and to his client. By publicly reminding Respondent of his ethical duties and publicly reprimanding him for his ethical violations, we trust that this public censure will satisfy the primary concern of every disciplinary proceeding—the protection of the public from the consequences of future unethical conduct of the sort that occurred in this case.

{35} Accordingly, this public censure will be filed with the Clerk of the Supreme Court pursuant to Rule 17–206(D) and will remain a part of Respondent's permanent record with the Disciplinary Board, where it may be revealed upon any inquiry to the Board concerning any discipline ever imposed against Respondent. The costs of this action in the amount of $1,871.34 are assessed against Respondent and, as previously ordered, should have been paid to the Disciplinary Board on or before April 1, 2006.

{36} **IT IS SO ORDERED.**