**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-040

Filing Date: January 24, 2013

Docket No. 30,748

NEW MEXICO BOARD OF
DENTAL HEALTH CARE,

      Petitioner-Appellee,

v.

LILLIAN P. JAIME, D.M.D.,

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Mary H. Smith, Assistant Attorney General
Albuquerque, NM

for Appellee

Paul Kennedy & Associates
Paul J. Kennedy
Arne R. Leonard
Albuquerque, NM

for Appellant

## OPINION

**KENNEDY, Chief Judge.**

**{1}** Petitioner New Mexico Board of Dental Health Care (Board) petitioned this Court for a writ of certiorari to the district court, arguing that the district court erred when it overturned the Board's decision to discipline Respondent Lillian Jaime, D.M.D. We granted the petition to review the question of whether the district court's decision was contrary to

1

the Uniform Licensing Act (ULA), NMSA 1978, Sections 61-1-1 through -33 (1957, as amended through 2003), insofar as the district court determined that the Board was required to give deference to the report issued by the Board's hearing officer. *See* Rule 12-505(D)(2)(d)(ii) NMRA (providing that this Court may grant a petition for a writ of certiorari if, among other reasons, the district court's decision conflicts with a statute). As we conclude that the district court's decision was contrary to the terms of the ULA, we reverse.

## I. BACKGROUND

**{2}** After a patient of Jaime's filed a complaint against her, the Board appointed a hearing officer to take evidence on the complaint. The hearing officer issued a report to the Board, finding no unprofessional conduct by Jaime and recommending that no disciplinary action be taken. The Board reviewed the report and the evidence presented during the hearing and reached the conclusion that the evidence did in fact demonstrate unprofessional conduct. The Board ordered Jaime to pay a fine, complete three hours of continuing education in ethics, and pay the costs of the administrative hearing. Jaime appealed to the district court, and the district court set aside the Board's decision. It concluded that the Board's decision was arbitrary and capricious in that it was improperly dismissive of the hearing officer's report. This conclusion had two bases. First, because the hearing officer was the one to take testimony, it was the hearing officer who was in the best position to make determinations involving the weight and credibility of the evidence. Second, to the degree that the evidence gave rise to any conflicting inferences, it was the hearing officer who was in the best position to resolve those inferences. The district court relied on *In re Bristol*, 2006-NMSC-041, 140 N.M. 317, 142 P.3d 905, and *Atlixco Coalition v. Maggiore*, 1998-NMCA-134, 125 N.M. 786, 965 P.2d 370, both of which involved administrative procedures not governed by the ULA in reaching its conclusions. The Board petitioned this Court for discretionary review, and we granted the petition.

## II. DISCUSSION

**{3}** We review the question of whether the district court erred in its appellate capacity by conducting the same review of the administrative order as did the district court. *See Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806 (stating that an appellate court reviewing a district court's decision in its appellate capacity will "conduct the same review of [the] administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal"). That standard of review requires us to consider whether the Board's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law. *See* § 61-1-17 (providing that a person entitled to a hearing under the ULA may obtain review of an adverse board decision pursuant to NMSA 1978, Section 39-3-1.1 (1999), which grants district courts appellate jurisdiction to review agency decisions); *see also* § 39-3-1.1(D) (stating that a district court may set aside, reverse, or remand a board's final order if it determines that "(1) the agency acted fraudulently,

2

arbitrarily[,] or capriciously; (2) the final decision was not supported by substantial evidence; or (3) the agency did not act in accordance with law"). In determining whether there was substantial evidence to support the agency's determination, we apply a whole record review. *Bass Enters. Prod. Co. v. Mosaic Potash Carlsbad Inc.*, 2010-NMCA-065, ¶ 28, 148 N.M. 516, 238 P.3d 885. "Under whole record review, evidence is viewed in a light most favorable to upholding the agency's determination, but favorable evidence is not viewed in a vacuum that disregards contravening evidence." *Id.* We do not defer to the agency's or the district court's conclusions of law, which are reviewed de novo. *See Rio Grande Chapter of Sierra Club*, 2003-NMSC-005, ¶ 17.

**{4}** The ULA provides the procedures that a professional licensing board must follow when initiating actions against a licensee. Hearings are conducted "either by the board or, at the election of the board, by a hearing officer who may be a member or employee of the board or any other person designated by the board in its discretion." Section 61-1-7(A). When a board appoints a hearing officer to preside over a hearing, the ULA specifies that the hearing officer is required to submit a report to the board containing findings of fact. *Id.* (providing that "[a] hearing officer shall, within thirty days after any hearing, submit to the board a report setting forth his findings of fact"). There is no statutory basis for a hearing officer to provide conclusions of law or to make a recommendation regarding discipline. A board is not required to give deference to the hearing officer's factual findings since, after the hearing officer's report is submitted to the board, it is the board that is charged with the task of rendering a decision and providing the findings of fact and conclusions of law underlying that decision. *See* § 61-1-13(A) ("After a hearing has been completed, the members of the board shall proceed to consider the case and as soon as practicable shall render their decision . . . . In cases in which the hearing is conducted by a hearing officer, all members who were not present throughout the hearing shall familiarize themselves with the record, including the hearing officer's report, before participating in the decision."); *see also* § 61-1-16 ("The decision of the board shall contain findings of fact made *by the board*; conclusions of law reached *by the board*; the order of the board based upon these findings of fact and conclusions of law; and a statement informing the applicant or licensee of his right to judicial review and the time within which such review must be sought." (emphasis added)). Thus, under the language of the ULA, it is clear that a board, and not any hearing officer it appoints, is responsible for all findings and conclusions, as well as for the ultimate decision regarding disciplinary action.

**{5}** Our review of the ULA demonstrates that the district court erred in concluding that the Board acted arbitrarily and capriciously when it failed to defer to the hearing officer's determination that Jaime's conduct was not unprofessional and his recommendation that she should not be disciplined. The Board followed all procedures required by the ULA. The Board's decision states that it reviewed the testimony, evidence, and exhibits presented to the hearing officer. It then made factual findings that included citations to the portions of the hearing transcript and the exhibits that supported those findings. A review of the hearing transcript, when properly considered in the light most favorable to the Board's decision, provides substantial evidence to support these findings.

3

**{6}** Nothing in the ULA suggests that the Board was limited in its ability to reach a different conclusion than did the hearing officer about whether or not the facts presented at the hearing constituted unprofessional conduct. The ULA places the responsibility for making both findings of fact with the Board as a whole, not with an individual hearing officer. *See* § 61-1-13(A) (stating that it is a quorum of the board that renders a decision in the case); § 61-1-16 (stating that the board's decision must be based on its findings of fact). Furthermore, the hearing officer is not permitted to make conclusions of law or recommendations regarding disciplinary action. *See* § 61-1-7(A) (calling upon a hearing officer only to make findings of fact). The board is a panel composed primarily of experts in the field of dentistry. *See* NMSA 1978, § 61-5A-8(A) (2003).

> The board shall consist of five dentists, two dental hygienists[,] and two public members. The dentists shall be actively practicing and have been licensed practitioners and residents of New Mexico for a period of five years preceding the date of appointment. The dental hygienist members shall be members of the committee and shall be elected annually to sit on the board by those sitting on the committee. The appointed public members shall be residents of New Mexico and shall have no financial interest, direct or indirect, in the professions regulated in the Dental Health Care Act.

*Id.* The ULA expressly permits board members to use their "experience, technical competence[,] and specialized knowledge" in evaluating the evidence before them. Section 61-1-11(C); *see also Weiss v. N.M. Bd. of Dentistry*, 110 N.M. 574, 583, 798 P.2d 175, 184 (1990) (stating that expert testimony is not required to support charges of a dentist's unprofessional conduct where the board itself is composed primarily of experts who are qualified to make a judgment about a dentist's adherence to the standards of professional conduct). In conducting that evaluation, the statutory scheme entrusts board members as a group to call upon their collective knowledge and expertise to make findings and conclusions and to determine what, if any, disciplinary action is appropriate. This is particularly important where, as here, there is no evidence that the individual selected to serve as the hearing officer, who is a retired judge and practicing attorney, had any particular knowledge of dentistry. The Board was entitled to reach its own conclusion about whether Jaime's conduct was unprofessional, regardless of the hearing officer's assessment of this issue.

**{7}** Here, the Board concluded that a preponderance of the evidence supported the determination that Jaime violated Regulation 16.5.16.10(B)(5) (06/14/2012) of the Administrative Code, which provides that a dentist commits unprofessional conduct when she fails "to advise the patient in simple understandable terms of the proposed treatment, the anticipated fee, the expectations of success, and any reasonable alternatives[.]" The factual findings on which this determination was based included the following:

> 6.      At [the patient's] June 20, 2007 appointment to finish his root scaling, and while he had been anesthetized and was sitting in the dentist's chair for that procedure, [Jaime] told [the patient] that he needed the fillings

4

replaced on [T]eeth [N]umbers 12 and 15. Although [the patient] objected, saying that he did not have the time before he had to return to work, [Jaime] told him it would only take [thirty] minutes, and [the patient] agreed to have the fillings replaced.

7. During this June 20, 2007 appointment, [Jaime] removed the fillings on [the patient's T]eeth [N]umbers 12 and 15 by drilling out the decay . . . and grinding down both teeth so she could replace the fillings, [then] showed him pictures of these teeth, suggested that they be crowned[,] and explained that replacing the fillings as he had agreed that morning was not the best treatment.

8. [Jaime] did not tell [the patient] before she removed his two fillings from [T]eeth [N]umbers 12 and 15 that he might need crowns on those teeth instead of the replacement fillings he expected.

9. While [the patient] was anesthetized and sitting in the dentist's chair during his June 20, 2007 appointment, and after [Jaime] had drilled the decay . . . and ground down [T]eeth [N]umbers 12 and 15 so she could replace his fillings, [Jaime] presented a Consent Form and a Treatment Plan to [the patient] for the temporary crowns she would place that day.

10. [The patient] signed the June 20, 2007 Consent Form indicating "Changes in Treatment Plan" and "Crowns, Bridges and Caps" and . . . signed a Treatment Plan estimating the cost of the two crowns, after he had been anesthetized and was sitting in the dentist's chair . . . and after his teeth were already ground down to remove his old fillings.

11. At [the patient's] June 20, 2007 appointment to finish his root scaling, [he] had no opportunity to refuse having temporary crowns placed that particular day on [T]eeth [N]umbers 12 and 15 until it was too late and his teeth had already been ground down.

We find nothing arbitrary or capricious in the Board's expert conclusion that Jaime's failure to discuss the possibility that her patient might need crowns rather than fillings or to inform him of the cost of the crowns prior to grinding his teeth down was a violation of Regulation 16.5.16.10(B)(5).

**{8}** Although nothing in the ULA suggests that the Board is required to defer to the hearing officer's findings of fact, and nothing in the ULA permits the hearing officer to reach conclusions of law or to make disciplinary recommendations, Jaime argues that the cases relied upon by the district court, involving other administrative procedures, indicate that deference to the hearing officer's report was required in this case. However, the administrative procedures in those cases differ in significant respects from the procedures

5

set forth in the ULA. For instance, *In re Bristol* involved a scheme for disciplining attorneys that required a hearing committee to take evidence and to issue not only findings of fact, but also conclusions of law and recommendations for discipline. 2006-NMSC-041, ¶¶ 2, 15-16; *see In re Oppenheim*, 2007-NMSC-022, ¶¶ 26-27, 141 N.M. 596, 159 P.3d 245 (relying on *In re Bristol* in a case involving bar admission). Similarly, *Atlixco Coalition* involved a regulatory scheme that required a hearing officer to take evidence and then make a recommended decision. 1998-NMCA-134, ¶ 15. Regulations provided that the Secretary of the New Mexico Environment Department could modify or reject the recommended decision, but required the Secretary's final order to set forth any reasons for taking such action. *Id.* In contrast to the procedures at issue in *In re Bristol* and *Atlixco Coalition,* where the hearing committee or officer was required to undertake a role similar to that of a district court—taking evidence, making findings of fact and conclusions of law, and then providing a remedy—the ULA creates a much more limited role for a hearing officer. Under the ULA, the hearing officer is only permitted to make findings, and even those findings need not be given deference by the board, as they are simply there to aid the board in making its own findings. *See* § 61-1-7(A) (requiring the hearing officer to make only findings of fact); § 61-1-13(A) (stating that it is a quorum of the board that renders a decision in the case); § 61-1-16 (stating that the board's decision must be based on its findings of fact). Because the administrative procedures in *In re Bristol* and *Atlixco Coalition* differ from those set forth in the ULA, those cases are inapplicable.

## III.   CONCLUSION

{9}   The district court erred by concluding that the Board acted arbitrarily and capriciously when it failed to defer to the hearing officer's report. As this conclusion was contrary to the ULA, we reverse the district court.

{10}   **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *N.M. Bd. of Dental Health Care v. Jaime*, No. 30,748**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal

Arbitrary and Capricious Actions
Hearings
Standard of Review

**GOVERNMENT**
Licensing

**TORTS**
Licensees