SAUER–GETRIEBE KG,
Plaintiff-Appellee,
Cross-Appellant,

v.

WHITE HYDRAULICS, INC., Harvey C. White and Hollis N. White, Jr., Defendants-Appellants, Cross-Appellees.

Nos. 82–1662, 82–1726.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1983.

Decided Aug. 22, 1983.

Certiorari Denied Jan. 6, 1984.
See 104 S.Ct. 976.

Charles R. Rust, Woodling, Krost & Rust, Cleveland, Ohio, for defendants-appellants, cross-appellees.

Joseph A. O'Brien, Oliver, Price & Rhodes, Scranton, Pa., for plaintiff-appellee, cross-appellant.

Before CUMMINGS, Chief Judge, BAUER and COFFEY, Circuit Judges.

CUMMINGS, Chief Judge.

We consider in this appeal whether an agreement in an international, commercial contract to arbitrate "any and all" contractual disputes governs disputes regarding whether the contract is invalid for lack of consideration, unconscionability, and vagueness and whether one party waives its right to arbitration by filing suit to enjoin the other party from breaching that contract pending arbitration.

On June 29, 1979, defendant White Hydraulics, Inc. ("White"), an Indiana corporation, contracted to give Sauer-Getriebe KG ("Sauer"), a West German limited partnership, the exclusive right in a territory encompassing some 47 countries, including East and West Germany but excluding the United States, to sell motors manufactured by White. White also agreed to convey to Sauer upon the occurrence of certain events the trade secrets, patent rights, and any other rights necessary for the manufacture of those motors and to furnish Sauer all the technical "know-how" about the motors necessary for Sauer to market them. In exchange, Sauer agreed to pay a certain royalty on each motor sold and stated that its "intent" was to purchase 50,000 motors from White during the years 1979 through 1985. Both parties agreed that "[a]ny and all disputes arising out of and in connection with" the contract would be settled by arbitration.

In August 1981, Sauer commenced this diversity action. It alleged that on July 21, 1981, White had repudiated the contract by informing Sauer that it was negotiating for the sale of its assets, including the manufacturing rights promised Sauer under the contract, to a third party. In its complaint, Sauer represented that it intended to exercise its right to arbitrate the contract dispute and sought preliminary and permanent injunctions barring White from transferring any manufacturing rights "until such time as the respective rights of the parties under the agreement are determined" by arbitration.

In its answer, White admitted having executed the alleged contract and having informed Sauer of the third-party negotiations. White claimed, however, that Sauer had waived its right to arbitrate by filing suit. White also counterclaimed for a declaratory judgment that the contract was unenforceable for vagueness and want of consideration, that its terms were unconscionable and inequitable, and that the contract was illegal under Section 1 et seq. of the Sherman Act (15 U.S.C. § 1 et seq.). Sauer thereafter filed a supplemental complaint in which it claimed that on August 31, 1983, it had requested White to transfer to it all manufacturing rights in the motors. Sauer further alleged that as of that date all of the events prerequisite to that transfer had occurred, but that White had refused to comply with its request.

The parties agreed to a bench trial. At the conclusion, Judge Sharp denied Sauer injunctive relief on the grounds that White had not repudiated the contract and that Sauer was not entitled to the manufacturing rights. Judge Sharp also enjoined Sauer from pursuing the arbitration proceeding it had begun on the ground that its request for arbitration before the International Commerce Commission ("ICC") had been filed in the wrong city—Paris, instead of London. Judge Sharp granted Sauer leave to refile its request in London but held that his findings would be binding in any subsequent arbitration proceeding. Finally, although Judge Sharp found the contract "vague and ambiguous" in certain respects, he dismissed White's counterclaim because he found "insufficient evidence to establish the invalidity of the contract." White has appealed and Sauer has cross-appealed. For the reasons that follow, we affirm the dismissal of White's counter-

claim but vacate the remainder of the judgment and direct the district court to enjoin White from repudiating the contract and from transferring any of Sauer's contractual rights to a third party until the arbitration requested by Sauer is completed and this lawsuit (including any appeals) is terminated.

### Arbitration Waiver

■ White makes two attacks on Sauer's right to arbitrate this dispute. First, White claims that before this dispute may be submitted to arbitration, a court must decide that the contract containing the arbitration clause is valid and enforceable. White argues that if there is no contract to buy and sell motors there is no agreement to arbitrate. The conclusion does not follow its premise. The agreement to arbitrate and the agreement to buy and sell motors are separate. Sauer's promise to arbitrate was given in exchange for White's promise to arbitrate and each promise was sufficient consideration for the other. See *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir.1967). Moreover, there is nothing that requires that courts rather than arbitrators decide the validity of contracts, see, *e.g.*, *In Re Oil Spill By The "Amoco Cadiz,"* 659 F.2d 789, 794–795 (7th Cir.1981) (fraud in the inducement), nor is there anything to suggest that when Sauer and White executed their contract they intended to limit in any way the kinds of disputes to be settled by arbitration. The language of the arbitration clause in the contract could not be broader. It expressly provides that

> Any and all disputes arising out of and in connection with this Agreement shall be finally settled by arbitration under the rules of Conciliation and Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the Rules. The arbitration shall take place in London, United Kingdom of Great Britain.

This provision covers Sauer's claim that White repudiated the contract as well as White's claim that the contract is invalid. It is too late for White to argue that arbitrators appointed under ICC rules lack the competence to adjudicate the validity of its contract. Had White thought so when it entered the contract, it would not have agreed to arbitrate "any and all claims" before them.

■ Second, White argues that by filing this lawsuit, Sauer waived its right to arbitrate. We disagree. Sauer's right to seek injunctive relief in court and its right to arbitrate are not incompatible—Sauer need not have abandoned one to pursue the other—and White cannot in good faith claim that it was misled by Sauer's filing this suit into believing that Sauer intended to forego arbitration. See *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir.1972). Sauer alleged in its complaint that it intended to submit a request for arbitration of its claims and Article 8, Section 5 of the internal rules of the ICC court of arbitration expressly authorizes parties to seek the interim relief Sauer sought in its complaint:

> Before the file is transmitted to the arbitrator, and in exceptional circumstances even thereafter, the parties shall be at liberty to apply to any competent judicial authority for interim or conservatory measures, and they shall not by so doing be held to infringe the agreement to arbitrate or to affect the relevant powers reserved to the arbitrator.

Sauer waited four more months before filing an arbitration request with the ICC but, in part at least, the delay was due to White's slowness in responding to Sauer's request for transfer of the manufacturing rights and at any rate, Sauer took no action during those four months inconsistent with its original position. It pleaded its arbitration right in defense to White's counterclaim and it reasserted that right in its supplemental complaint.[1]

---

1. White relies on *Galion Iron Works v. J.D. Adams Mfg. Co.,* 128 F.2d 411 (1942), and *United States v. Bregman Construction Co.,* 256 F.2d 851 (1958), both from this Circuit, to support its claim that arbitration was waived by Sauer's filing this lawsuit. Both cases are inapplicable because Sauer did not invoke the litigation machinery inconsistently with its

Judge Sharp did not find that Sauer had waived its right to arbitration. Nonetheless he enjoined Sauer from pursuing the arbitration request it had filed with the ICC in Paris on the ground that the contract required that the request be filed in London. The contract, however, requires that the arbitration "take place in London," not that the request for arbitration be filed there. The contract also provides that the arbitration shall be conducted in accordance with ICC rules. Article 3, paragraph 1 and Article 1, paragraph 5 of those rules in effect require that requests for arbitration be filed in Paris with the Secretariat of the ICC Court of Arbitration. It does not follow that because Sauer filed its request in Paris the arbitration will take place there. Sauer did not request that it take place there—in fact the arbitrator Sauer selected lives in London—and Article 12 of the ICC arbitration rules provides that "the place of arbitration shall be fixed by the Court [of Arbitration], *unless agreed upon by the parties.*" (emphasis supplied). There is therefore no reason to suppose that because Sauer filed its arbitration request as required by ICC rules, the arbitration will not be held in the place specified in the contract. Sauer is therefore not required to refile its request in London. Finally, because the arbitration request was filed properly, we also reverse Judge Sharp's order directing Sauer to nominate a new arbitrator.

*District Court Findings Regarding The Validity of the Contract*

Although the district court found "insufficient evidence to establish the invalidity of the contract * * *," the court did find the contract "vague and ambiguous * * * [and] not certain nor reasonably ascertainable." The court also found that the contract should be strongly and strictly construed against Sauer and most favorably for White and that the arbitrators must therefore construe any uncertain, ambiguous, and vague terms against Sauer and in

right to arbitration, and because Sauer's brief delay before formally requesting arbitration was not undue and did not prejudice White.

favor of White. Since the parties agreed to arbitrate all disputes arising from the contract, these findings are not binding and should be disregarded by the arbitrators in any subsequent arbitration proceeding. See 9 U.S.C. § 3; *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270; *McElwee-Courbis Construction Co., Inc. v. Rife,* 133 F.Supp. 790 (M.D. Pa.1955).

*Injunction Against White's Selling Trade Secrets and Manufacturing Rights*

The district court refused to grant Sauer's request to enjoin White's sale of its manufacturing contractual rights pending resolution of the arbitration. Since Sauer seeks only an injunction pending arbitration, we will consider whether the four factors justifying a preliminary injunction are present. *Wesley-Jessen Division v. Bausch & Lomb, Inc.,* 698 F.2d 862, 867 (7th Cir. 1983).

Sauer has shown that it has made a substantial investment in White's hydraulic motors and that it cannot obtain the necessary trade secrets and manufacturing rights from others. Sauer has also shown that without equitable relief, there would be a substantial injury to its reputation, good will and prestige not compensable in damages. Thus it has adequately demonstrated irreparable harm.

White might suffer some hardship if it is enjoined from transferring its manufacturing rights but, by the same token, Sauer's right to arbitration will not be worth much if White transfers those rights before arbitration is settled. Moreover, Sauer is willing to supply a security bond to guarantee White's financial recovery should it be forced to sell its business at a lower price after the injunction is lifted (Sauer Br. 22). That would protect White against any financial loss, so that the balance of hardship is in Sauer's favor.

Indeed a settlement might have been achieved during that interval.

Although it is improper for a court to decide a contractual dispute relegated to arbitration, so far as the issuance of an injunction is concerned Sauer has demonstrated enough probable success on the merits to warrant relief. Sauer will be entitled to specific performance if it convinces the arbitrators that the contract entitles it to the trade secrets and manufacturing rights claimed. The contractual events prerequisite to the transfer of those rights have ostensibly occurred—Sauer has ordered over 15,000 motors, 18 months expired from the signing of the contract and the placing of those orders, and as of August 31, 1981 the Deutschmark—U.S. dollar ratio had been above 2.20 for four months. White bases its case solely on the alleged invalidity of a contract it freely signed three years ago even though it performed under the contract during those three years. Despite Judge Sharp's March 12, 1982, finding that the contract is valid on its face and his March 31 decision that Sauer failed to establish its invalidity (White App. 52, 57), White is now endeavoring to repudiate that agreement on four separate grounds (White App. 37–39). In these circumstances, Sauer has sufficiently shown likely success.

Finally, the public interest is served by granting this injunctive relief because there is a strong policy in favor of carrying out commercial arbitration when a contract contains an arbitration clause. Arbitration lightens courts' workloads, and it usually results in a speedier resolution of controversies. Since Sauer has satisfied the requisites for obtaining injunctive relief of this type, the district court's refusal to grant it was erroneous.

Judgment affirmed with respect to dismissal of White's counterclaim. Remainder of judgment vacated and cause remanded with directions to enjoin White from repudiating the June 29, 1979, contract and from transferring any of Sauer's claimed contractual rights to a third party until the London arbitration requested by Sauer on December 18, 1981, is completed and this lawsuit (including any appeals) is terminated.

Sauer to file security bond in district court in the sum of $100,000. Costs on appeal to be borne by White.