**Certiorari Granted, April 5, 2013, No. 34,007**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-049**

**Filing Date: December 28, 2012**

**Docket No. 31,075**

**AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO, AFSCME LOCAL 3022,**

       **Petitioner-Appellee,**

**v.**

**CITY OF ALBUQUERQUE,
RICHARD J. BERRY, MAYOR
OF CITY OF ALBUQUERQUE,**

       **Respondents-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge**

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
Albuquerque, NM

for Appellee

City of Albuquerque

David Tourek, City Attorney
Michael I. Garcia, Assistant City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Samantha M. Hults, Assistant City Attorney
Albuquerque, NM

for Appellants

1

**OPINION**

**CASTILLO, Chief Judge.**

**{1}** The American Federation of State, County, and Municipal Employees (AFSCME) sought an injunction and temporary restraining order in district court to prevent the City of Albuquerque (City) from closing the drug treatment Albuquerque Recovery Program (ARP) and laying off bargaining unit employees. The court granted an injunction regarding the closing of the facility and contracting out of work but refused to grant equitable relief regarding the layoff procedures. AFSCME later sought to compel arbitration on the issue of layoffs. The court granted the motion to compel arbitration. The City appeals, arguing that AFSCME waived its right to arbitration by invoking the court's discretionary powers. We agree and reverse.

## I.    BACKGROUND

**{2}** The City's Family and Community Services Department provided services to individuals addicted to drugs through ARP. Based on budget concerns and low success rates, the City was in the process of closing the program during the spring of 2010. The program had eight employees, four of whom were AFSCME members, who are covered by a Collective Bargaining Agreement (CBA).

**{3}** On April 8, 2010, AFSCME filed a verified petition for temporary restraining order, preliminary injunction or, in the alternative, writ of mandamus for injunctive relief, relying on the language in Sections 35 and 38 of the CBA. Layoff procedures are covered by Section 35 of the CBA, which requires thirty days' written notice to an employee before the effective date of a layoff and provides a guide to transfers and the rehiring of employees. Section 38 of the CBA covers the procedures to be followed when the City permanently contracts out services that historically have been performed by bargaining unit members. Those procedures require the City to notify AFSCME of an anticipated action thirty days before implementation, to meet and confer with AFSCME over the anticipated action, and to provide data to AFSCME so that it could present arguments to the City before the contracting out of services takes place.

**{4}** On April 12, 2010, a lengthy hearing was held at which three witnesses testified regarding the closing of the program. The court entered a temporary restraining order and preliminary injunction that ordered the City to keep the facility open until it abided by the provisions of Sections 38.1 through 38.1.4 of the CBA, which is the portion of the CBA that sets out procedures for the contracting out of city services. The court refused to enjoin the city regarding the layoff process under Section 35 of the CBA.

**{5}** On June 8, 2010, AFSCME filed a motion to show cause before the court, asking the court to hold the City in contempt and to order reinstatement of the laid-off employees under Section 38. The court denied that motion and allowed the facility to remain closed, but

2

ordered the City to meet one more time with AFSCME to discuss the issue of contracting out the services.

**{6}** Three months later, on September 20, 2010, AFSCME filed a motion to compel arbitration concerning the issue of layoffs under Section 35 of the CBA. The City opposed the motion on the grounds of waiver. The district court granted the motion. In this appeal by the City, we consider whether AFSCME, through its actions in district court, waived its right to arbitration.

## II.     DISCUSSION

### A.     Standard of Review

**{7}** "As with a summary judgment motion, a motion to compel arbitration may only be granted as a matter of law when there is no genuine issue of material fact as to the existence of an agreement." *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573. We review de novo any grant of a motion to compel arbitration. *See id.* As we review the district court's determination, we keep in mind that "[t]he party asserting the default in pursuing arbitration bears a heavy burden of proving waiver." *United Nuclear Corp. v. Gen. Atomic Co.*, 93 N.M. 105, 115, 597 P.2d 290, 300 (1979).

**{8}** "Our cases which have considered the question of when to find waiver concur that the line is not easy to draw uniformly. The inquiry depends on the facts of each case[.]" *Bd. of Educ., Taos Mun. Sch. v. The Architects, Taos* (*Architects*), 103 N.M. 462, 463, 709 P.2d 184, 185 (1985). While we generally show deference to a district court on factual questions, *see In re Bristol*, 2006-NMSC-041, ¶¶ 26-27, 140 N.M. 317, 142 P.3d 905, where no facts are in dispute, we are faced with a question of law. *See Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 9, 145 N.M. 113, 194 P.3d 728. We review questions of law de novo. *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2011-NMSC-039, ¶ 4, 150 N.M. 650, 265 P.3d 701. Previous New Mexico cases that have analyzed the waiver of arbitration rights have focused on the legal standard to be met while reviewing the entire record of the proceedings below. *See Architects,* 103 N.M. at 463-64, 709 P.2d at 185-86; *Wood v. Millers Nat'l Ins. Co.*, 96 N.M. 525, 527-28, 632 P.2d 1163, 1165-66 (1981); *Bernalillo Cnty. Med. Ctr. Emp. Ass'n Local Union No. 2370 v. Cancelosi* (*Cancelosi*), 92 N.M. 307, 308-10, 587 P.2d 960, 961-63 (1978). We follow other courts in concluding that, when the underlying facts are not in dispute, the question of whether a party has waived its right to arbitration is a legal matter subject to de novo review. *See, e.g.*, *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1116 (8th Cir. 2011); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009); *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 9 (1st Cir. 2005); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001); *Britton v. Coop. Banking Grp.*, 916 F.2d 1405, 1409 (9th Cir. 1990); *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 886 F.2d 1249, 1259 (10th Cir. 1989) ("Where the dispositive

3

facts are undisputed, the denial of a motion to compel arbitration, based on a finding of waiver, is a legal conclusion which we review de novo."); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24 (2d Cir. 1995); *In re Estate of Cortez*, 245 P.3d 892, 895 (Ariz. Ct. App. 2010); *Cordillera Corp. v. Heard*, 592 P.2d 12, 13 (Colo. Ct. App. 1979); *D.M. Ward Constr. Co. v. Elec. Corp. of Kansas City*, 803 P.2d 593, 597 (Kan. Ct. App. 1990); *Good Samaritan Coffee Co. v. LaRue Distrib., Inc.*, 748 N.W.2d 367, 371 (Neb. 2008); *Willco Enters., LLC v. Woodruff*, 2010 OK CIV APP 18, ¶ 12, 231 P.3d 767; *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 463 (Tex. App. 2011); *Educators Mut. Ins. Ass'n v. Evans*, 2011 UT APP 171, ¶¶ 18-21, 258 P.3d 598.

**B.      Waiver**

**{9}**      The City argues that the district court erred in granting AFSCME's motion to compel arbitration on the ground that AFSCME had waived its right to arbitrate.  The City contends that AFSCME invoked the court's discretionary powers through its pursuit of injunctive relief and its subsequent motion to show cause.  AFSCME counters by saying that it "limited its recourse" in the district court to a request for temporary equitable relief and did not substantively invoke the court's discretion by asking the court to consider the merits of its case, thus preserving its right to pursue arbitration.  We begin by looking to New Mexico law on this issue.

**{10}**      The Supreme Court of New Mexico has set out three guiding principles for determining whether a party has waived its right to pursue arbitration.  *See Architects*, 103 N.M. at 463-64, 709 P.2d at 185-86.  First, any analysis begins with a presumption in favor of arbitration and against finding a waiver.  *See id.* At 463, 709 P.2d at 185 (quoting *United Nuclear Corp.*, 93 N.M. at 114, 597 P.2d at 299, for the proposition that "'the courts hold that all doubts as to whether there is a waiver must be resolved in favor of arbitration'"). "The second principle, following from the first, is that relief will only be granted upon a showing of prejudice to the party opposing arbitration.  Dilatory conduct in itself does not constitute waiver." *Architects*, 103 N.M. at 463, 709 P.2d at 185.  Third, a court will look at "the extent to which the party now urging arbitration has previously invoked the machinery of the judicial system" and in doing so provoked reliance by the other party in the manifested intent to waive arbitration and in the court's litigation of the case. *Id.* at 463-64, 709 P.2d at 185-86.  We begin with the third principle.

**1.      Invoking the Judicial Machinery and the Court's Discretion**

**{11}**      The "point of no return" in invoking the machinery of the judicial system "is reached when the party seeking to compel arbitration invokes the court's discretionary power, prior to demanding arbitration, on a question other than its demand for arbitration." *Wood*, 96 N.M. at 527-28, 632 P.2d at 1165-66.  The granting of the equitable remedy of an injunction is a discretionary act by a court. *See Smart v. Carpenter*, 2005-NMCA-056, ¶ 6, 139 N.M. 524, 134 P.3d 811.

4

**{12}** There are three New Mexico cases that provide direction in this regard: *Wood*, *Architects*, and *Cancelosi*. In *Wood*, our Supreme Court found waiver where the party waited three-and-a-half months after the complaint to file a motion to compel arbitration and in the meantime had brought a motion to dismiss before the court, thus invoking the judicial machinery. 96 N.M. at 527-28, 632 P.2d at 1165-66. In *Architects*, the party waited about twelve months to file its motion to compel arbitration, caused "undue delay," propounded discovery, and filed multiple motions. 103 N.M. at 463, 709 P.2d at 185. Our Supreme Court in *Architects* found that the party had "activated the judicial machinery" and thus had waived the right to arbitrate. *Id.* at 464, 709 P.2d at 186.

**{13}** *Wood* and *Architects* came after one case that did not find waiver. In *Cancelosi*, 92 N.M. at 310, 587 P.2d at 963, only one month separated the original complaint and the opposing party's motion to compel arbitration. Our Supreme Court noted that the party seeking to compel arbitration did not "tak[e] a position inconsistent with an intent to arbitrate the controversy." *Id.* The Court concluded that "nothing of consequence occurred in the lawsuit" during that brief time and the "case was not at issue" because "no hearings had been held" and "the judicial waters had not been tested." *Id.* at 309-10, 587 P.2d at 962-63.

**{14}** We review the allegations made by AFSCME in its complaint on the issue of layoffs:

> 17. The City . . . notified the employees that they were being laid off without providing notice to [AFSCME], without seeking its input, and without bargaining with [AFSCME] over the unilaterally[]imposed decision.
>
> 18. Under the CBA between the City and [AFSCME], the City is obligated to provide [AFSCME] notice of any layoff and recall procedure and accept input from [AFSCME] over the same.
>
> 19. The City unilaterally imposed the layoff upon the employees covered by the CBA between [AFSCME] and the City without prior notice to [AFSCME] or an opportunity to bargain over the change.
>
> 20. [T]he City has violated § 3-2-9(A)(6) of the Labor-Management Relations Ordinance . . . by violating the CBA with [AFSCME].

As part of its request for relief, AFSCME asked the court to "compel [the City] through writ of mandamus to reinstate the eight [sic] employees that are bargaining unit members, reinstate the methamphetamine program[,] and bargain with [AFSCME] prior to implementing a future lay[]off." AFSCME was not seeking monetary damages such as back pay. Had AFSCME prevailed and had the court granted AFSCME's entire request for relief, the court would have essentially resolved the full merits of the case.

**{15}** At numerous times during the hearing on the petition, AFSCME pursued the issue

of layoffs within its request for injunctive relief, referring to Section 35 during the hearing. In addition, an AFSCME member testified about whether the City had satisfied Section 35.1.2 of the CBA and whether the City had met with AFSCME to discuss reasons for the layoffs and to identify the employees affected. An AFSCME member also testified about whether the City had provided thirty days' written notice of the layoffs as required by Section 35.1.4 of the CBA. At the end of the hearing, the district court gave its ruling on the issue of layoffs and concluded that "the [c]ourt cannot find that [AFSCME is] entitled to a restraining order of preliminary injunction under the [CBA] [p]rovision 35.1.2, although I believe it's close, but I believe the City did comply." The court then proceeded to issue an injunction regarding the closing of the facility and the contracting out of services. Earlier during the hearing, the court said it did not view Section 35 as requiring multiple meetings, and an AFSCME member testified that one meeting, in which the layoffs were discussed, did take place. A City official testified that layoff notices were issued to the affected bargaining unit members thirty days before any layoffs were to take effect.

**{16}** We agree that the court did not resolve the merits of the case regarding layoffs; however, the court's action reflects an assessment of the core issues involving the City's adherence to the CBA's layoff procedures. At that point in the proceeding the court was obligated to determine whether AFSCME was likely to succeed on the merits; the hours-long hearing conducted by the court dealt with the merits of whether the process followed by the City violated the layoff provisions of the CBA.

**{17}** Unlike *Cancelosi*, we cannot say that here the "case was not at issue" and that "the judicial waters had not been tested." 92 N.M. at 310, 587 P.2d at 963. The lengthy proceedings, involving exhibits and the testimony of three witnesses, constituted a judicial inquiry sufficient to "inject the court into the merits of issues more appropriately left to the arbitrator." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984).

**{18}** Finally, in AFSCME's complaint and representations to the district court, AFSCME appears to have taken the stance that it brought the case in district court because arbitration was not a viable avenue for obtaining injunctive relief. We observe, however, that the United States Supreme Court has held otherwise. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (stating that "arbitrators do have the power to fashion equitable relief").

**{19}** We conclude that AFSCME invoked the discretion of the court and the judicial machinery by raising the issue of whether the City followed the CBA as to layoffs during the proceedings before the district court in its bid for injunctive relief.

## 2.     Prejudice and Reliance

**{20}** "The type of prejudice usually invoking a waiver involves trial preparation based on the belief that the other party does not desire or intend to make a demand for arbitration."

6

*Wood*, 96 N.M. at 527, 632 P.2d at 1165; *see United Nuclear*, 93 N.M. at 117, 597 P.2d at 302 (stating that "[p]reparation for trial by a party based on the belief that the other party does not desire or intend to make a demand for arbitration has been held to constitute substantial prejudice"). We remain mindful of "any other actions taken by the moving party which are sufficiently inconsistent with his seeking arbitration." *United Nuclear Corp.*, 93 N.M. at 115, 597 P.2d at 300.

**{21}** In its brief, AFSCME insists that it did not ask the district court to determine whether the City violated Section 35 of the CBA in its handling of layoffs. AFSCME argued before the court that it did not invoke the discretionary authority of the court on the issue of layoffs because it had not asked the court to rule on the merits of the issue during its bid for injunctive relief. AFSCME contends that the court merely assessed, as it is required to do when considering a request for injunctive relief, whether AFSCME was likely to prevail on the merits once the case proceeded.

**{22}** In its prayer for relief, AFSCME asked of the court:

> 26. [T]he District Court should compel the Mayor of the City . . . through writ of mandamus to reinstate the eight [sic] employees that are bargaining unit members, reinstate the methamphetamine program, and bargain with [AFSCME] prior to implementing a future lay off.

> 27. Although the CBA provides for a grievance procedure, [AFSCME] should be excused from exhausting the contract remedies due to the time-sensitive nature of this [p]etition.

AFSCME pursued the issue of layoffs under Section 35 of the CBA throughout the April 12 hearing, examining three witnesses, and requesting a ruling that would have essentially resolved the issue to the point that arbitration would have become duplicative. It would have been reasonable for the City to have assumed that AFSCME was foregoing arbitration in favor of a district court ruling on the City's handling of layoff procedures during the closing of the ARP facility.

**{23}** We note that a delay in asserting a right to arbitrate is also a factor in finding a party has waived that right. *See Architects*, 103 N.M. at 464, 709 P.2d at 186 (stating that "timing is all when the question is one of waiver"); *United Nuclear*, 93 N.M. at 116, 597 P.2d at 301 (stating that a party "who claims the right to arbitration must take some action to enforce that right . . . within a reasonable time after the suit is filed" (citations omitted)). AFSCME did not assert its rights to arbitration under the CBA at any time during the three months of litigation before the district court or for two more months afterward. Such an omission was one factor weighing against the defendant seeking to compel arbitration but failing to raise the right to arbitration as an affirmative defense in *Architects*, where the Court noted: "Instead, Architects raised other affirmative defenses, did not press the issue of arbitration, and proceeded with discovery, after the matter had been set for trial." 103 N.M. at 464, 709

P.2d at 186; *see United Nuclear*, 93 N.M. at 120, 597 P.2d at 305 (noting other jurisdictions where "[t]he failure to plead the arbitration clause as a defense to the lawsuit [is] considered a waiver of the party's rights arising under such clause" and that "[g]enerally the courts have held that failure to plead an affirmative defense results in the waiver of that defense; and it is excluded as an issue" (internal quotation marks and citations omitted)).

**{24}** Further, AFSCME failed to manifest an intent to pursue arbitration. To the contrary, it essentially repudiated the idea of arbitrating the issue. Early in the April 12 hearing on injunctive relief, AFSCME's counsel told the court:

> Now, certainly, the agreement has a provision in it which provides remedies. These remedies are provided and agreed upon on the assumption of a good-faith relationship by a grievance and arbitration provision, Your Honor, and that provision provides a remedy, *but in this situation, it is not [an] adequate remedy*. What we would do is go to the arbitrator . . . [a]nd all we get is a finding from an arbitrator that the contract was violated, but our rights to protect our employees are ignored and lost. *Right now is the only time* that we have the right to protect our employees under the [CBA].

(Emphasis added.) Such a representation would reasonably lead the opposing party to believe that AFSCME had no plans to pursue arbitration on the issue of layoffs and that AFSCME was seeking relief in district court in lieu of its right to arbitrate the issues. AFSCME thus "took a position inconsistent with an intent to arbitrate or intended to litigate, rather than arbitrate." *Cancelosi*, 92 N.M. at 310, 587 P.2d at 963.

**{25}** Prejudice to the City is evident where AFSCME's words and actions suggested an intent to litigate the merits before the district court rather than through arbitration, especially if the City were forced to suffer further litigation expenses and if an arbitrator were to subsequently rule contrary to the district court and find for AFSCME, making the City liable for back pay. If arbitration were allowed, the City would be asked to present virtually the same case in two different forums, subjecting it to the risk of conflicting verdicts. *Cf. Lyndoe v. D.R. Horton, Inc.*, 2012-NMCA-103, ¶ 28, 287 P.3d 357 (stating that "the purpose of arbitration . . . is to further judicial economy" (internal quotation marks and citation omitted). We refuse to allow AFSCME an opportunity to litigate the issue of layoffs. *See Wood*, 96 N.M. at 528, 632 P.2d at 1166 ("To hold otherwise would permit a party to resort to court action until an unfavorable result is reached and then switch to arbitration. We cannot sanction such a procedure."). We agree that "it is not difficult to find prejudice where a party . . . is allowed to test out the merits of its case in a preliminary injunction application but then resorts to arbitration when it becomes apparent that the court regards its case as standing on weak footing." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 457 (3d Cir. 2011).

**{26}** Putting together the factors that go toward determining waiver, we conclude that the City relied upon and was prejudiced by AFSCME's decision to litigate the layoffs under Section 35 of the CBA through the injunctive proceedings filed in the district court.

### 3.      Injunctive Relief in General

**{27}**      While we conclude that AFSCME in this case invoked the judicial machinery and prejudiced the City to the point of waiving its rights to pursue arbitration, we do not declare that *any* pursuit of injunctive relief constitutes a per se bar to the right to later compel arbitration. *See Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d 1017, 1020 (W.D. Wash. 2011) (noting "that neither filing a lawsuit covering an arbitrable dispute nor seeking injunctive relief in that suit are per se inconsistent with the right to compel arbitration" (emphasis omitted)).   However, such injunctive relief should be related to supporting the arbitration process and ensuring its viability. *See id.* ("Many courts have held that a party seeking to arbitrate a dispute nonetheless has the right to seek injunctive relief from a court.   That right, however, is a right to seek equitable relief in aid of arbitration." (emphasis omitted) (internal quotation marks and citation omitted)).

**{28}**      The situation in *Riverside Publishing* parallels that of the parties in the case before us.   "Riverside did not file suit or seek injunctive relief in aid of arbitration.   Instead, it filed suit and requested injunctive relief without acknowledging the arbitrability of its claims.   Riverside's complaint [was] wholly silent as to the parties' arbitration agreement."   *Id.* (emphasis omitted).

**{29}**      Other courts have permitted a party to seek injunctive relief while preserving the right to arbitrate in unique circumstances, when failing to preserve the status quo would erode the arbitration process or render it meaningless. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1052 (4th Cir. 1985) (concluding that "a district court has the discretion to grant one party a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute"); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983) (noting that the "right to seek injunctive relief in court and [the] right to arbitrate are not incompatible").   However, in such cases, the parties seeking injunctive relief do not hide their intent to arbitrate. *See, e.g.*, *Sauer-Getriebe*, 715 F.2d at 349 ("In its complaint, Sauer represented that it intended to exercise its right to arbitrate the contract dispute and sought preliminary and permanent injunctions barring White from transferring any manufacturing rights until such time as the respective rights of the parties under the agreement are determined by arbitration." (internal quotation marks omitted)).   In *Erving v Virginia Squires Basketball Club*, 468 F.2d 1064, 1066 (2d Cir. 1972), a basketball player's performance contract included a clause allowing injunctive relief during a contract dispute because of his unique skills and importance to the franchise.   In *Erving*, the team invoked that clause in pursuing injunctive relief but also, unlike AFSCME in the case before us, asserted its right to pursue arbitration up front in the litigation process, thus putting the court and opposing party on notice of its intent. *Id.* at 1068; *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726 (10th Cir. 1988); *RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227 (5th Cir. 1988); *First Allmerica Fin. Life Ins. Co. v. Sumner*, 212 F. Supp. 2d 1242 (D. Or. 2002); *In re MacGregor (FIN) Oy*, 126 S.W.3d 176 (Tex. App. 2003), *vacated in part on other grounds*, 174 S.W.3d 419 (Tex. App. 2005).   As the Third Circuit Court of Appeals recently concluded: "Even where

the party moving for a preliminary injunction does so before filing for arbitration, it can avoid waiving its right to arbitrate by notifying the opposing party of its intent to invoke arbitration in the future." *Gray Holdco, Inc.*, 654 F.3d at 456.

## III. DISSENT

{30} The dissent characterizes the question of prejudice as a classic fact question, states that the determination of whether waiver has occurred involves issues of fact, and believes that we should defer to the district court's determination of this issue. Dissent, ¶ 35. The district court, however, relied primarily on AFSCME's argument that it had not filed a complaint for adjudication on the merits but rather had only requested a temporary restraining order as to the layoffs—a request denied by the court. The court specifically stated that the issues regarding layoffs were made "during a hearing on a temporary restraining order. That is different than a merits hearing." As we set forth in the Majority Opinion, the question does not depend on the type of proceeding. It depends on the "original intent of the party now asking for arbitration" as inferred by the court based on three principles: strong policy preference for arbitration; prejudice to the party opposing arbitration; and the extent to which the party requesting arbitration has previously invoked the machinery of the judicial system. *Architects*, 103 at 463, 709 P.2d at 1273. Our analysis of the case based on these principles leads us to conclude that the case should remain in the courts.

{31} The dissent points to the City's participation in the selection of an arbitrator and then its turnaround via letter to the arbitrator informing him of its position that arbitration was not appropriate because AFSCME had already invoked the jurisdiction of the court on the issue of layoffs. Dissent, ¶ 39. Because the court did not evaluate the principles as listed in *Architects*, it did not base its decision on this information.

{32} AFSCME requested relief based on violations of the CBA as to layoffs. Because it was not able to prove that it might prevail on the merits, the relief requested was denied. AFSCME chose to first bring its issues regarding layoffs to the courts, it lost, and now it wants to present similar issues to an arbitrator. The dissent agrees that AFSCME produced evidence and made arguments regarding violations of the layoff provisions of CBA, but it makes a distinction between providing this type of evidence in the context of a merits hearing and in the context of an application for injunctive relief. The dissent reviews the factors to be considered when granting injunctive relief and states that the district court "may simply have decided that AFSCME's remedy at law was adequate." Dissent, ¶ 37. There is nothing in the record to support this. After hearing the evidence, the court denied equitable relief on the layoff issue because "the City did comply" with the CBA. The order makes no mention of the specific reasons for denial. At the hearing on the motion to compel, the court agreed with AFSCME that a hearing on a temporary restraining order is different from a merits hearing and it was on this difference that the court granted the motion to compel. As we have explained, we evaluate waiver based on the three principles set forth in *Architects*, and our conclusion is that AFSCME waived the arbitration provision of the

CBA as to the issue of layoffs.

## IV.    CONCLUSION

**{33}**    In the case before us, AFSCME failed to invoke its right to arbitration and instead manifested an intent to forgo what it considered an inadequate remedy in favor of swifter justice before the district court. For the foregoing reasons, we reverse the district court's granting of AFSCME's motion to compel arbitration and remand for further proceedings consistent with this Opinion.

**{34}    IT IS SO ORDERED.**

_____
             **CELIA FOY CASTILLO, Chief Judge**

**I CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**

**CYNTHIA A. FRY, Judge, dissenting**

**CYNTHIA A. FRY, Judge (dissenting).**

**{35}**    The fundamental principle guiding a court in determining whether a party has waived its right to arbitration is the strong policy favoring arbitration. Indeed, our Supreme Court stated in *Architects* that "all doubts as to whether there is a waiver must be resolved in favor of arbitration." 103 N.M. at 463, 709 P.2d at 185 (internal quotation marks and citation omitted). In addition, the determination of whether waiver has occurred generally involves issues of fact. *Crutchfield v. N.M. Dep't of Taxation and Rev.*, 2005-NMCA-022, ¶ 28, 137 N.M. 26, 106 P.3d 1273; *see Architects*, 103 N.M. at 463, 709 P.2d at 185 (stating that the question of whether arbitration has been waived "depends on the facts of each case"). In the present case, the question of whether the City would be prejudiced by being required to arbitrate is a classic fact question, and we should defer to the district court's determination of this issue. Because the majority appears to have placed minimal emphasis on the policy favoring arbitration and has declined to give deference to the district court's determination, I respectfully dissent.

**{36}**    The majority applies de novo review of the district court's decision because it contends that the facts are not in dispute. Majority Opinion, ¶ 8. I disagree with this approach because the facts relevant to the question of prejudice were clearly disputed. A leading treatise states that "[p]rejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." 1 Martin Domke, *Domke*

*on Commercial Arbitration* § 23:10, at 23-20 (3d ed. 2012). Determinations of fairness and damage are classic fact-driven decisions that should be left to the trier of fact. And yet, in discussing the prejudice factor, the majority employs the language of fact-finding and discusses what the City would "reasonably" believe as a result of AFSCME's conduct. *See* Majority Opinion, ¶¶ 22, 25. Instead of making our own finding of reasonableness, we should give deference to the district court's determination of what the City reasonably believed.

**{37}**     Viewing the circumstances in the context of this deferential standard of review, I would affirm. Although AFSCME certainly produced evidence and made arguments regarding Section 35 of the CBA, they did so in the context of their application for injunctive relief. The district court's denial of injunctive relief did not constitute a determination of the merits of AFSCME's claims under Section 35. Instead, the denial of injunctive relief resulted from the consideration of several factors and the balancing of equities and hardships. *See Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, ¶ 6, 128 N.M. 611, 995 P.2d 1053 (stating some of the factors to be considered in determining whether to grant injunctive relief, including the nature of the interest to be protected, the adequacy of injunctive relief when compared to other remedies, third parties' interests, the practicability of granting and enforcing and injunction, and the relative potential hardship to the parties if the relief is granted or denied). The district court may simply have decided that AFSCME's remedy at law was adequate. *See id.* ¶ 7 (explaining that "[i]njunctions are harsh and drastic remedies [that] should issue only in extreme cases of pressing necessity and only where there is no adequate . . . remedy at law" (alterations in original) (internal quotation marks and citation omitted)). It was the remedy at law that AFSCME sought to have determined through arbitration.

**{38}**     The district court recognized the distinction between the case made in support of AFSCME's application for injunctive relief and the case AFSCME wished to arbitrate. The court observed that injunctive relief is a "proactive" remedy and that AFSCME still had its "reactive" remedy and might "be entitled to damages on the back end when things are more fully developed." Consequently, I disagree with the majority's statement that "the court's action [in denying injunctive relief] reflects an assessment of the core issues" related to Section 35. Majority Opinion, ¶ 16.

**{39}**     I further do not agree that the City demonstrated that it would be prejudiced by an order requiring AFSCME's claims under Section 35 to be arbitrated. Practically speaking, "the more involved a party becomes in litigation, the greater chance that prejudice to the other party will be found." 1 Domke, *supra*, at 23-21. Here, however, by denying the City's claim of waiver, the district court implicitly determined that AFSCME's involvement in litigation was not so extensive as to prejudice the City. There is nothing in the record that persuades me that this determination was unsupported or an abuse of discretion. AFSCME's litigation activity was limited to that necessary to support its application for injunctive relief. It involved only a one-day hearing, and no discovery was undertaken. In addition, AFSCME did not unduly delay its request for arbitration. It filed its motion to compel arbitration only

12

five months after the district court denied injunctive relief on Section 35, during which time the only litigation that occurred in district court involved a motion to show cause that was completely unrelated to Section 35. Moreover, after the district court denied injunctive relief related to Section 35, AFSCME *and the City* agreed on an arbitrator to decide the Section 35 issues. The City then told the arbitrator that the district court had already resolved the issues that were to be the subject of the arbitration, and this triggered AFSCME's motion in the district court to compel arbitration.

**{40}** These circumstances support the district court's determination that the City would not be prejudiced by an order compelling arbitration and, giving deference to that determination, and bearing in mind the policy favoring arbitration, I would affirm the district court's order.

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for *AFSCME v. City of Albuquerque*, No. 31,075**

**APPEAL AND ERROR**

Prejudicial Error
Standard of Review

**CIVIL PROCEDURE**
Arbitration
Injunctions
Waiver

**EMPLOYMENT LAW**
Collective Bargaining
Employee Grievances
Labor Unions
Termination of Employment

**REMEDIES**
Arbitration